# EXHIBIT A

## IN THE COURT OF COMMON PLEAS OF ERIE COUNTY, PENNSYLVANIA
### CIVIL DIVISION

ALBERT CELEC, individually and as
Executor and on behalf of the estate of his
partner, DR. PHILIP GINNETTI,

                Plaintiffs,

       v.

EDINBORO UNIVERSITY, CIGNA
CORPORATION, and LIFE INSURANCE
COMPANY OF NORTH AMERICA,

               Defendants.

CIVIL DIVISION

Case No. 12343-2014

**COMPLAINT**

JURY TRIAL DEMANDED

Filed on behalf of: Plaintiffs

Counsel of record for this party:

John Stember
PA ID No. 23643
jstember@stembercohn.com
Maureen Davidson-Welling
PA ID No. 206751
mdw@stembercohn.com
**STEMBER COHN &**
      **DAVIDSON-WELLING, LLC**
The Hartley Rose Building
425 First Avenue, 7th Floor
Pittsburgh, PA 15219
T.: (412) 338-1445
F.: (412) 338-1446

## IN THE COURT OF COMMON PLEAS OF ERIE COUNTY, PENNSYLVANIA
## CIVIL DIVISION

ALBERT CELEC, individually and as
executor and on behalf of the estate of his
partner, DR. PHILIP GINNETTI,

                Plaintiffs,

      v.

EDINBORO UNIVERSITY, CIGNA
CORPORATION, and LIFE INSURANCE
COMPANY OF NORTH AMERICA,

                Defendants.

Case No. 12343-2014

JURY TRIAL DEMANDED

### NOTICE

      You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

      YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

      IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Lawyer Referral & Information Service
P.O. Box 1792
Erie, PA 16507
814/459-4411
Mon –Fri
8:30 a.m – Noon; 1:15 p.m. – 3:00 p.m.

IN THE COURT OF COMMON PLEAS OF ERIE COUNTY, PENNSYLVANIA
CIVIL DIVISION

| | |
|---|---|
| ALBERT CELEC, individually and as executor and on behalf of the estate of his partner, DR. PHILIP GINNETTI,<br><br>Plaintiffs,<br><br>v.<br><br>EDINBORO UNIVERSITY, CIGNA CORPORATION, and LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>Defendants. | Case No. 12343-2014<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

AND NOW, come the Plaintiffs, Albert Celec ("Celec"), individually and on behalf of the estate of Dr. Philip E. Ginnetti ("Dr. Ginnetti"), by and through their attorneys, Stember Cohn & Davidson-Welling, LLC, and aver as follows:

### I. INTRODUCTION

1.    In 2010, Dr. Philip Ginnetti left a secure job as Dean of Youngstown State University's Beeghley School of Education to accept a position as Provost and Vice President at Edinboro University of Pennsylvania ("Edinboro"). He did so largely because Edinboro prohibits discrimination due to sexual orientation and marital status in employment, and participation in its Management Benefits Program ("MBP") allowed Dr. Ginnetti to provide healthcare and other benefits to his longtime domestic partner, Albert Celec.

2.    Dr. Ginnetti and Celec had been domestic partners since 1994. In 1999, they executed a Shared Living Agreement ("SLA"), which, among other things, required each of them

to maintain life insurance on the other and to name the other as beneficiary on any policy. Shortly after hire, Dr. Ginnetti applied for recognition of Celec as his qualified domestic partner, which Edinboro granted. Thereafter, the couple received benefits, including health care, under the MBP until Dr. Ginnetti died on June 29, 2012, after which Celec became Executor of his Estate.

3.     Under the MBP, Edinboro provided Dr. Ginnetti with $50,000 in life insurance from Prudential and a right to purchase supplemental life insurance coverage. Dr. Ginnetti purchased $100,000 in additional coverage from Cigna. Edinboro knew that Celec was the intended beneficiary under both policies, but in preparing the applications for Dr. Ginnetti, it failed to name Celec as beneficiary.

4.     After Dr. Ginnetti died in June 2012, Prudential paid the $50,000 in policy proceeds to Celec upon submission of evidence of Celec's domestic partnership with Dr. Ginnetti. Unlike Prudential, Cigna refused to recognize Celec as beneficiary or "spouse," despite the SLA, Edinboro's certification of their domestic partnership and Delaware law, which was the controlling law under the express terms of Cigna's policy and which required recognition of Celec as Dr. Ginnetti's "spouse."

5.     Celec brings this action on his own behalf and as Executor of Dr. Ginnetti's estate, for violations of the state and federal constitutions, insurance bad faith, breach of contract, and negligent misrepresentation.

## II. VENUE

6.     Venue is proper in this Court pursuant to Pa.R.Civ.P. 1006 and 2103 since most of the events and omissions that give rise to these claims occurred in Erie County; Cigna and LICNA are regularly engaged in business in Erie County and Edinboro resides in Erie County.

2

## III. PARTIES

7.     Dr. Philip E. Ginnetti was an adult male who served as Provost and Vice President for Academic Affairs at Edinboro from 2010 until he died on June 29, 2012. From 1994 until his death, Dr. Ginnetti lived with Celec, his domestic partner, in a jointly owned home in Boardman, Ohio.

8.     Plaintiff Albert Celec is a 55 year-old male who resides in Boardman, Ohio. He was the domestic partner of Dr. Ginnetti from 1994 until Dr. Ginnetti's death in June 2012, after which Celec became Executor and sole heir and beneficiary of his Estate.

9.     Defendant Edinboro University ("Edinboro") is a member of the Pennsylvania State System of Higher Education ("PASSHE"). Edinboro is a public university located in Erie County, Pennsylvania, with approximately 8,500 students and 700 employees.

10.     Defendant Cigna Corporation ("Cigna") is a Delaware Corporation with its principal places of business at 900 Cottage Grove Road, Bloomfield, Connecticut 06002 (corporate headquarters) and Two Liberty Place, 1601 Chestnut Street, Philadelphia, Pennsylvania 19192 (Cigna's life insurance office). Cigna has more than 1,000 employees nationwide and is regularly engaged in business in Erie County.

11.     Defendant Life Insurance Company of North America ("LICNA") is a Pennsylvania Corporation and a wholly-owned subsidiary of Cigna, with its headquarters and principal place of business at Two Liberty Place, 1601 Chestnut Street, Philadelphia, Pennsylvania 19192. In 2010, LICNA issued $100,000 in life insurance coverage to Dr. Ginnetti pursuant to group life policy no. FLX 980054 (the "Cigna policy") (**Exhibit A**). Collectively, Defendants Cigna and LICNA are referred to herein as "Cigna."

3

## IV. FACTS

### A.    Edinboro May Not Discriminate In Providing Employee Benefits

12.    Edinboro is a member school of PASSHE and follows PASSHE policies, including those related to discrimination and domestic partnerships.

13.    As an Executive Agency, PASSHE and its member schools, including Edinboro, are bound by Executive Orders from the Governor's Office, including Order 2003-10, which prohibits employment discrimination due to sexual orientation. (**Exhibit B**, Order 2003-10).

14.    In 2007, PASSHE adopted a Same-Sex Domestic Partner policy that made the MBP available to qualified same-sex domestic partners of managerial employees working at member schools.  (**Exhibit C**, PASSHE's "Information Regarding Same-Sex Domestic Partner Benefits for Faculty, Non-Faculty Coaches and Managers.").

15.    Edinboro has also adopted an EEO policy prohibiting discrimination in employment and participation in benefit programs due to sexual orientation or marital status. (**Exhibit D**, "Equal Opportunity/Affirmative Action and Nondiscrimination Policy No. G005.").

### B.    Dr. Ginnetti and Celec Were Domestic Partners.

16.    From 1994 until his death on June 29, 2012, Dr. Ginnetti resided with Albert Celec as domestic partners in a jointly owned home in Boardman, Ohio.

17.    On March 5, 1999, Dr. Ginnetti and Celec, assisted by their attorney, executed a Share Living Agreement ("SLA") in which they agreed to:

- Name the other as beneficiary on any retirement or pension plan, IRA or 401K, or **life insurance policy**, and maintain life insurance coverage on each other;

- Put their property into a trust and named each other as sole beneficiary; and

- Name each other as sole heir and beneficiary under their respective wills.

(**Exhibit E**, "SLA") (emph. supp.).

4

**C.**   **Edinboro Provided Management Benefits To Ginnetti and Celec.**

18.   After earning a PhD in Education, Dr. Ginnetti worked as a professor at Youngstown State University ("YSU") from 1983 until 2003, when he was named Dean of YSU's Beeghley College of Education.

19.   In 2010, Edinboro offered Dr. Ginnetti a position as Provost and Vice President for Academic Affairs, in which he could participate in PASSHE's Same-Sex Domestic Partner program and Edinboro's Management Benefits Program ("MBP").

20.   PASSHE permits qualified same-sex domestic partners to participate in the MBP which, among other things, provides them with health care and insurance benefits.

21.   Dr. Ginnetti accepted Edinboro's offer on July 1, 2010 and left YSU largely because Edinboro's MBP allowed him to provide healthcare and other benefits to Celec.

22.   In or about July 2010, Dr. Ginnetti purchased a house in Edinboro so he and Celec had a place close to campus to entertain or stay, when needed.

**D.**   **Dr. Ginnetti and Celec Completed The Domestic Partnership Certification.**

23.   To qualify for PASSHE's Same-Sex Domestic Partner program, an employee and his partner had to complete a Same-Sex Domestic Partnership Certification, which Edinboro maintains in his personnel file. (**Exhibit C**, p. 1, "Eligibility Requirements for Same Sex Domestic Partners.").

24.   On July 6, 2010, Dr. Ginnetti and Celec submitted a Domestic Partnership Certification to Edinboro. (**Exhibit F**, PASSHE "Same Sex Domestic Partnership Certification.").

25.   Edinboro requires three (3) forms of documentation to support a certification.

26.     Dr. Ginnetti submitted: (1) drivers' licenses with a common address, (2) beneficiary designations for life insurance, (3) retirement benefits under their wills, and (4) durable or health care powers of attorney (**Exhibit F**, p. 2, "Certification"), after which Edinboro recognized Celec as his qualified domestic partner, and provided Celec with healthcare and other MBP benefits until Dr. Ginnetti's death.

27.     Throughout Dr. Ginnetti's employment at Edinboro, he and Celec regularly attended campus events together and were well known as domestic partners.

### E.     The Life Insurance Policies

28.     Under the MBP, Edinboro provided Dr. Ginnetti with $50,000 in life insurance from Prudential and the option to purchase supplemental coverage.

29.     In July 2010, Dr. Ginnetti purchased $100,000 in supplemental coverage from Cigna under group life policy no. FLX 980054.

30.     Dr. Ginnetti made it clear to Edinboro that Celec was his intended beneficiary under both the Prudential and Cigna policies.

31.     Further, under the SLA, Dr. Ginnetti was legally obligated to maintain life insurance on Celec during his life and to name Celec as beneficiary on any policy he obtained.

32.     In fact, Dr. Ginnetti expressly planned that if he predeceased Celec, Celec would use the Cigna proceeds to pay off the mortgage on the Edinboro home, which would become (and has now become) Celec's under Dr. Ginnetti's will.

33.     Linda Harrison ("Harrison"), an Edinboro Human Relations employee, filled out Dr. Ginnetti's life insurance paperwork and directed him to sign it, which he did.

34.     Harrison, however, neglected to fill-in Celec's (or any) name on the beneficiary line or notice this omission or alert Dr. Ginnetti to it.

6

35.     The Prudential and Cigna policies provide that without a beneficiary designation, proceeds will be paid to a surviving spouse, if one exists. (**Exhibit A**, Cigna Policy at p. 14).

F.     **Cigna Refuses To Pay Celec As Beneficiary Of Dr. Ginnetti's Life Insurance Policy.**

36.     Dr. Ginnetti died on June 29, 2012.

37.     In accordance with his will, Celec was appointed Executor of his Estate.

38.     Shortly after Dr. Ginnetti died, Edinboro sent Celec documents that revealed it had failed to list him as beneficiary when it prepared the Prudential and Cigna applications.

39.     The responsible HR employee, Linda Harrison, apologized to Celec for the omission, stating: "I'm sorry. I made a mistake and if I could, I'd take it back."

40.     On July 25, 2012, Sid Booker, Edinboro's Associate VP of HR and Faculty Relations, wrote to Cigna and Prudential at Celec's request "to verify and provide evidence of [the Celec-Ginnetti] partnership."

> When Dr. Ginnetti …became eligible for health care coverage…he requested that his domestic partner, Albert S. Celec, be added as a covered dependent. Dr. Ginnetti did provide a PASSHE Same-Sex Domestic Partnership Certification and supporting evidence… …Albert S. Celec was covered under the PASSHE Group Health Program as the qualified domestic partner of Phillip E. Ginnetti effective July 1, 2012 through the date of death, June 29, 2012.

(**Exhibit G**, letters from Booker to Prudential/Cigna).

41.     After he sent the letters, Booker told Celec that going forward Edinboro intended to treat this as strictly an issue between Celec and the carriers.

42.     On August 3, 2012, Celec submitted claims to Prudential and Cigna, requesting payment of the proceeds from each policy (**Exhibit H**, Claim for Benefits).

43.     In mid-August 2012, Prudential determined that Celec was, in fact, Dr. Ginnetti's rightful beneficiary and sent Celec a check for the $50,000 policy proceeds.

44.     On August 22, 2012, however, Cigna denied Celec's claim, stating that absent a beneficiary designation:

> Death Benefits will be paid to the first surviving class of the following living relatives: spouse; child or children; mother or father; brothers or sisters; or to the executor or administrators of the Insured's estate.

(**Exhibit I**, p. 1, Cigna letter to Celec, 8/22/12).

45.     The Cigna policy expressly provides that it "is issued in Delaware and shall be governed by its laws."

46.     In 2012, Delaware law recognized parties to civil unions as "spouses" whether or not termed such.

47.     Despite Delaware law, Cigna denied Celec's claim because "you do not meet the definition of a Spouse and are not in any other class of living relatives." (**Exhibit I**, pp. 1-2).

48.     Celec appealed Cigna's August 22, 2012 denial.

49.     While Celec's appeal was pending, Cigna sent several "Preferential Beneficiary" notices to Dr. Ginnetti's mother, Irene Ginnetti.

50.     In September 2012, Edinboro President Julie Wollman, who characterized Celec's claim as "overwhelming," phoned Cigna on Celec's behalf and left a voice mail for "Mike J," Cigna's listed decision-maker, in which she stated her view that Celec was the rightful beneficiary.

51,     On October 16, 2012, Irene Ginnetti wrote to Cigna, urging it to pay the proceeds to Celec and stating: "It is also my belief that this policy was intended for Albert S. Celec, Jr., [Dr. Ginnetti's] partner." (**Exhibit J**).

52.     On December 6, 2012, Cigna again denied Celec's appeal, but offered to review additional supporting "information" submitted in sixty (60) days. (**Exhibit K**).

53. On January 2, 2013 and February 1, 2013, Celec submitted additional evidence and argument, including the SLA, which demonstrated Dr. Ginnetti's legal obligation to name Celec as beneficiary on any life insurance policy he obtained. (See **Exhibits L and M**, letters from Celec's counsel).

54. Later in January 2013, while Celec's appeal was pending, Cigna paid the policy proceeds ($100,000) to Irene Ginnetti—despite her letter urging Cigna to pay Celec.

55. Seven months later, on July 12, 2013, Cigna denied Celec's appeal, reasoning:

    (1) The SLA provision requiring Dr. Ginnetti to name Celec as beneficiary on any life insurance policy he purchased bound Celec and Ginnetti, but not Cigna; and

    (2) PASSHE's Same-Sex Domestic Partner program, which barred discrimination based on sexual orientation, applied to only MBP health insurance, not MBP life insurance.

(**Exhibit N**).

## V. CAUSES OF ACTION

### Count I – Reformation of Insurance Policy
### (Dr. Ginnetti and Celec v. Cigna and Edinboro)

56. Paragraphs 1–53 are incorporated as if fully set forth herein.

57. In July 2010, Dr. Ginnetti purchased $100,000 in supplemental insurance from Cigna under group life policy no. FLX 980054, which Edinboro offered as part of the MBP.

58. This purchase created a contract between Dr. Ginnetti and Cigna.

59. As Celec was the intended beneficiary of this policy, he is a third party beneficiary under the contract.

60. Harrison, an Edinboro HR employee, prepared Dr. Ginnetti's life insurance paperwork and directed him to sign it, which he did.

61. Dr. Ginnetti made it clear to Edinboro that Celec was his intended beneficiary.

62.     Harrison, however, neglected to fill-in Celec's (or any) name on the beneficiary line or notice this omission or alert Dr. Ginnetti to it.

63.     Harrison later admitted that she made a "mistake" in completing the application.

64.     Dr. Ginnetti and Edinboro believed that, in the event of Dr. Ginnetti death, the proceeds of the Cigna policy would be paid to Celec.

65.     Cigna knew that Celec was not properly named as beneficiary and that it would not treat him as Dr. Ginnetti's "spouse" under the policy, yet it did nothing to correct Dr. Ginnetti's and Edinboro's mistaken belief that the proceeds would be paid to Celec if Dr. Ginnetti pre-deceased him.

66.     As a result of Cigna's unilateral mistake, which it failed to correct, Dr. Ginnetti and Celec are entitled to reformation so that Celec is named beneficiary on the policy.

### Count II – Breach of Contract
### (Dr. Ginnetti and Celec v. Cigna)

67.     Paragraphs 1–66 are incorporated as if fully set forth herein.

68.     In July 2010, Dr. Ginnetti purchased $100,000 in supplemental insurance from Cigna.

69.     This purchase created a contract between Dr. Ginnetti and Cigna.

70.     As Celec was the intended beneficiary of this policy, he is a third party beneficiary under the contract.

71.     The Cigna policy provides:

> **To Whom Payable.**
> Death Benefits will be paid to the Insured's named beneficiary, if any, on file at the time of payment. If there is no named beneficiary or surviving beneficiary, Death Benefits will be paid to the first surviving class of the following living relatives: spouse; child or children; mother or father; brothers or sisters; or to the executors or administrators of the Insured's estate.

72.     The Cigna policy defines "Spouse" as "[t]he current lawful Spouse of an Employee under age 70." (**Exhibit A**, Cigna Policy at p. 22).

73.     Celec was a "named beneficiary" under the Cigna policy because,

- Cigna had a copy of the SLA "on file" (submitted by Celec during his administrative appeal), under which Dr. Ginnetti was obligated to name Celec beneficiary on any life insurance policy he obtained; and

- Dr. Ginnetti communicated to Edinboro that Celec was his intended beneficiary.

74.     Celec was Dr. Ginnetti's "spouse" under Delaware law and thus he was also a "spouse" within the meaning of the Cigna policy, since he was a qualified same-sex domestic partner, and party to a legal (contractual) union (*viz.*, the SLA) that established rights and obligations substantially similar to marital rights and obligations. See 13 Del.C. §§ 101(c); 213, 214(a).

75.     Under the contract, Cigna was obligated to provide life insurance in accordance with PASSHE's and Edinboro's nondiscrimination policies and, accordingly, on Dr. Ginnetti's death, to treat Celec, his qualified same-sex domestic partner, as his "spouse."

76.     Although Edinboro, Irene Ginnetti and Celec told Cigna that Celec was the intended beneficiary, and Celec provided documentation of Dr. Ginnetti's and his domestic partnership, including the SLA, and despite Delaware law, Cigna refused to pay the policy proceeds to Celec.

77.     Cigna breached its contract with Dr. Ginnetti and its obligations to Celec as third party beneficiary, by failing to pay the proceeds to Celec after Dr. Ginnetti died.

### Count III – Negligent Misrepresentation
### (Dr. Ginnetti and Celec v. Cigna)

78.     Paragraphs 1–77 are incorporated as if fully set forth herein.

79.     Cigna issued coverage under the Cigna policy to Dr. Ginnetti.

80.     As Celec was the intended beneficiary of this policy, he is a third party beneficiary under it.

81.     Cigna owed Dr. Ginnetti and Celec a duty of due care in administering its policy and was obligated to provide them accurate information about it.

82.     Cigna was negligent in discharging this duty in failing to provide them with accurate and complete information about Cigna's requirements for beneficiary designation.

83.     After Dr. Ginnetti purchased coverage from Cigna in July 2012, the policy and related documents remained within Cigna's and/or Edinboro's custody or control until he died.

84.     During this time, Cigna failed to advise Dr. Ginnetti or Celec that it would not recognize the SLA or Celec as his "spouse" or beneficiary and that Dr. Ginnetti had to specifically designate Celec as beneficiary before Cigna would pay him the policy proceeds.

85.     Celec and Dr. Ginnetti reasonably relied upon Cigna's representations, including its silence and omissions, to their detriment.

86.     As a result of Cigna's omissions and negligent misrepresentations, Dr. Ginnetti was denied the benefit of his bargain and Celec was deprived of the policy proceeds.

### Count IV – Bad Faith, 42 Pa. § 8371 and common law
### (Dr. Ginnetti and Celec v. Cigna)

87.     Paragraphs 1–86 are incorporated as if fully set forth herein.

88.     This claim is brought for "bad faith" refusal to pay, in violation of Pennsylvania statutory and common law, or, in the alternative, for violation of Delaware common law.

89.     The Cigna policy expressly provides that it was "issued in Delaware and shall be governed by its laws."

90.     Under Delaware law, a party to a "civil union" (whether or not termed such or entered into outside of Delaware) is a "spouse."   13 Del.C. § 214 (2012) ("A party to a civil union shall be included in any definition or use of the terms 'dependent,' 'family,' 'husband and wife,' 'immediate family,' 'next of kin,' 'spouse,' 'stepparent,' 'tenants by the entirety,' and other terms, whether or not gender-specific, that denote a spousal relationship or a person in a spousal relationship.")

91.     When Dr. Ginnetti died, he and Celec were parties to a "civil union"—and therefore "spouses"—under Delaware law.  13 Del.C. §§ 213- 214.

92.     In 1999, they executed a comprehensive SLA that created rights and obligations under Ohio and Pennsylvania Law similar to marital rights and obligations. They also obtained a Same-Sex Domestic Partnership Certification from PASSHE, thereby creating a legal obligation in a state entity to recognize their relational status.

93.     The choice of law provision in the Cigna policy selecting Delaware law is limited to construing the policy. It does not encompass tort claims arising from Cigna's administration of the policy.

94.     Cigna issued its group policy to PASSHE (including member school Edinboro), a Pennsylvania agency, for the benefit of individuals employed in Pennsylvania, such as Dr. Ginnetti, and administered the policy from its offices in Pittsburgh and Philadelphia.

95.     During his administrative appeal, Celec provided Cigna with evidence that he was the legal and intended beneficiary as well as a "spouse" under the Cigna Policy.

96.     Cigna disregarded this evidence and refused to pay Celec.

97.     On the same facts, Prudential recognized Celec as rightful beneficiary under its policy and paid the policy proceeds to him.

98.     All Delaware and Pennsylvania insurance contracts include a covenant of good faith and fair dealing.

99.     Both Delaware and Pennsylvania law require insurance carriers to administer policies in good faith.

100.    A carrier that administers a policy in bad faith is liable for interest, compensatory damages, punitive damages, and attorneys' fees.

101.    Here, Cigna acted in bad faith and breached its duty of good faith and fair dealing by ignoring clear evidence of Celec's entitlement and paying the proceeds to Irene Ginnetti.

102.    Cigna also acted in bad faith and discriminated against Plaintiffs on the basis of sexual orientation and marital status by requiring more and different evidence from them to establish Celec's entitlement than Cigna requires from a surviving spouse of a heterosexual couple, and by refusing to recognize Celec as Dr. Ginnetti's "spouse" despite their qualified domestic partnership and the SLA.

102.    Cigna lacked a good faith basis for denying Celec's claim.

103.    Cigna knew it had no reasonable basis to deny Celec's claim, or recklessly disregarded evidence in denying Celec's claim for benefits.

104.    Cigna's actions violate 42 Pa.C.S. § 8371 and Pennsylvania common law, and, if Delaware law applies, violate Delaware common law as well.

105.    As a result of Cigna's bad faith, Dr. Ginnetti was denied the benefit of his bargain, and Celec was denied the policy proceeds and suffered emotional distress and other damages.

Count V – Equal Protection – U.S. Const. Amend. XIV, § 1
(Dr. Ginnetti and Celec v. Edinboro)

106.   Paragraphs 1–105 are incorporated as if set forth herein.

107.   The U.S. Constitution provides, "nor shall any State... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

108.   Edinboro is a state entity and subject to the constraints of the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution.

109.   In 2010, when Dr. Ginnetti purchased the Cigna policy, Pennsylvania did not permit same-sex marriage or recognize such marriages from states that did. *See* 23 Pa.C.S. § 1102 and § 1704.

110.   By signing the SLA, in which they named each other as sole heir and executor in their respective wills, and being certified by PASSHE, Dr. Ginnetti and Celec did all they could legally do in Ohio or Pennsylvania at that time to establish a spousal relationship and, in the event of Dr. Ginnetti's death, to confer property rights and benefits on Celec, as the surviving spouse.

111.   The Cigna policy provided under the MBP did not provide equal coverage to qualified same sex domestic partner spouses and heterosexual spouses.  Absent a specific "named beneficiary" designation, Cigna would not recognize a spousal relationship with or pay proceeds to qualified same-sex domestic partner spouses, while it routinely recognized and paid proceeds to similarly situated heterosexual surviving spouses.

112.   There is no rational basis for differentiating between similarly situated heterosexual and qualified domestic partner spouses in providing MBP life insurance benefits.

113.    Edinboro's provision of inferior benefits to gay and lesbian managerial employees and their qualified same-sex domestic partners is not substantially related to an important government interest.

114.    Edinboro has no justification for treating heterosexual spouses more favorably than qualified same-sex domestic partners under the MBP; and in so doing, Edinboro denied Dr. Ginnetti's and Celec's rights to Equal Protection.

115.    Edinboro's provision of inferior benefits to gay and lesbian managerial employees and their qualified same-sex domestic partners violates Edinboro's, PASSHE and Pennsylvania non-discrimination policies.

116.    As a result of Edinboro's violation of the Equal Protection Clause, Dr. Ginnetti and Celec have suffered damages and are entitled to reformation of the insurance contract.

**Count VI – Equal Protection – Pa. Const. art. I, § 26**
**(Dr. Ginnetti and Celec v. Edinboro)**

117.    Paragraphs 1–116 are incorporated as if fully set forth herein.

118.    The Pennsylvania Constitution provides that: "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." Pa. Const. Art. I, § 26.

119.    By Executive Order, and PASSHE and Edinboro policy, Edinboro may not discriminate in employment or provision of benefits based on sexual orientation or marital status.

120.    In providing benefits under the MBP, Edinboro treated same-sex couples less favorably than similarly situated married heterosexual couples.

121.    Edinboro had no basis for treating qualified same-sex couples and married heterosexual couples differently under the MBP.

16

122.   The provision of inferior insurance benefits to Dr. Ginnetti and Celec and other similarly situated gay and lesbian employees and their qualified same-sex domestic partners discriminates against them in violation of PASSHE's and Edinboro's anti-discrimination policies, Executive Order 2003-10, and deprives them of equal protection under the state Constitution.

123.   As a result of Edinboro's violation of the Pennsylvania Constitution, Dr. Ginnetti and Celec have suffered damages and are entitled to reformation of the insurance contract.

### Count VII – Breach of Contract
### (Dr. Ginnetti and Celec v. Edinboro)

124.   Paragraphs 1–123 are incorporated as if fully set forth herein.

125.   By accepting Edinboro's job offer in 2010, Dr. Ginnetti and Edinboro entered into a contract to employ him under the terms offered, which included protection under Edinboro's and PASSHE's anti-discrimination policies and participation in the MBP.

126.   Celec was a third party beneficiary of this contract as it related to healthcare, life insurance and other MBP domestic partner benefits.

127.   Under this employment contract, Edinboro was obligated to ensure that Dr. Ginnetti and his beneficiaries received the benefits to which they were entitled.

128.   The Cigna Policy expressly provides that Edinboro is acting as Dr. Ginnetti's "agent" in completing the insurance forms and, accordingly, owed him a duty of due care.

129.   Edinboro breached its duty of due care by failing to properly complete the forms or timely notice its error or alert Cigna that Celec was the intended beneficiary.

130.   Edinboro recognized Celec as Dr. Ginnetti's qualified same-sex domestic partner and intended beneficiary of the Cigna policy.

131.   Edinboro HR employee, Harrison, apologized for failing to designate him as beneficiary on Cigna's forms: "I'm sorry. I made a mistake and if I could, I'd take it back."

132.   Sid Booker, Edinboro's Associate VP of HR and Faculty Relations, sent a letter to Cigna dated July 25, 2012, noting that "Dr. Ginnetti did provide a PASSHE Same-Sex Domestic Partnership Certification and supporting evidence" and that Celec was "the qualified domestic partner of Phillip E. Ginnetti effective July 1, 2012 through the date of death, June 29, 2012."

133.   In September 2012, Edinboro President Wollman described Celec's claim as "overwhelming" and phoned Cigna and left a voice mail stating her view that Celec was rightful beneficiary.

134.   Edinboro has breached its employment contract with Dr. Ginnetti, and its duties to Celec as a third party beneficiary, by failing to carry out Dr. Ginnetti's intent and ensure that Celec received the proceeds from the Cigna policy.

### Count VIII – Negligence / Negligent Misrepresentation
### (Dr. Ginnetti and Celec v. Edinboro)

135.   Paragraphs 1–134 are incorporated as if fully set forth herein.

136.   Edinboro prepared and submitted the forms that Dr. Ginnetti needed to purchase supplemental life insurance from Cigna under the MBP.

137.   Edinboro owed Dr. Ginnetti a fiduciary duty and/or a duty of reasonable care to complete these forms properly, as it was acting as Dr. Ginnetti's "agent…for transactions related to this insurance." (**Exhibit A**, Cigna Policy, p. 22).

138.   Edinboro, through its HR employee Harrison, represented to Dr. Ginnetti that she had properly completed the forms and designated Celec as beneficiary.

139.   Edinboro knew or should have known that Celec was not specifically named as beneficiary on the Cigna forms, and absent that, Cigna would not recognize Celec as beneficiary.

140.    Reasonably relying on Edinboro's representations and omissions, Dr. Ginnetti paid the monthly premiums on the Cigna policy until his death.

141.    Dr. Ginnetti and Celec were harmed by Edinboro's misrepresentations.

142.    As a result of Edinboro's misrepresentations and omissions, which Dr. Ginnetti and Celec reasonably relied upon to their detriment, Edinboro thwarted Dr. Ginnetti's intentions and deprived Celec of the proceeds of the Cigna policy.

## VI.  PRAYER FOR RELIEF

WHEREFORE Plaintiffs request that the Court:

a)    Assume jurisdiction of their case;

b)    Find for Plaintiffs and against Defendants on all counts of this Complaint;

c)    Award Plaintiffs compensatory, consequential and punitive damages;

d)    Award Plaintiffs costs and expenses of suit, including reasonable attorneys' fees, expert witness costs, and such other relief as the Court deems necessary and proper after trial of this matter;

e)    Reform the Cigna policy or construe the definition of "spouse" in it to include qualified domestic partners;

f)    Reform Dr. Ginnetti's beneficiary designations to name Celec as beneficiary under the Cigna Policy; and

g)    Order such other and further relief as may be deemed just and proper.

**JURY TRIAL DEMANDED**

Respectfully submitted,

Dated:  December 4, 2014

Maureen Davidson-Welling, Esquire
PA ID No. 206751
mdw@stembercohn.com
John Stember, Esquire
PA ID No. 23643
jstember@stembercohn.com
**STEMBER COHN &**
 **DAVIDSON-WELLING, LLC**
The Hartley Rose Building
425 First Avenue, 7th Floor
Pittsburgh, PA  15219
T.: (412) 338-1445
F.: (412) 338-1446

*Attorney for Plaintiff*

IN THE COURT OF COMMON PLEAS OF ERIE COUNTY, PENNSYLVANIA
CIVIL DIVISION

ALBERT CELEC, individually and as
executor and on behalf of the estate of his
partner, DR. PHILIP GINNETTI,

                Plaintiffs,

v.

EDINBORO UNIVERSITY, CIGNA
CORPORATION, and LIFE INSURANCE
COMPANY OF NORTH AMERICA,

                Defendants.

Case No. 12343-2014

JURY TRIAL DEMANDED

## VERIFICATION

I, Albert Celec, attest that the facts in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief, and made subject to the penalties of 18 PA. CONS. STAT. ANN. § 4904 relating to unsworn falsification to authorities.

_November 20, 2014_
Date

_Albert Celec_
Albert Celec, individually and as Executor
Plaintiffs

# EXHIBIT A

---

### PENNSYLVANIA LIFE AND HEALTH INSURANCE
### GUARANTY ASSOCIATION ACT NOTICE

---

Residents of Pennsylvania who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Pennsylvania Life and Health Insurance Guaranty Association. The purpose of this Association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the claims of the insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the Guaranty Association is not unlimited, however. And as noted below, this protection is not a substitute for consumers' care in selecting companies that are well managed and financially stable.

---

### DISCLAIMER

The Pennsylvania Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residence in Pennsylvania. You should not rely on coverage by the Pennsylvania Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy.

Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus.

Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the guaranty association for the purpose of sales, solicitation or to induce you to purchase any kind of insurance policy.

The Pennsylvania Life and Health
Insurance Guaranty Association
290 King of Prussia Road
Suite 218
Radnor, PA 19087

State of Pennsylvania
Department of Insurance
1326 Strawberry Square
Harrisburg, PA 17120

---

The State law that provided for this safety-net coverage is called the Pennsylvania Life and Health Insurance Guaranty Association Act, 40 PS § 991

### COVERAGE

The following is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the act or the rights or obligations of the guaranty association.

EXHIBIT A

Generally, individuals will be protected by the Life and Health Insurance Guaranty Association if they live in Pennsylvania and hold a life, health or annuity contract, or if they are insured under a group insurance contract, issued by a member insurer. The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

## EXCLUSIONS FROM COVERAGE

However, persons holding such policies are not protected by this Association, if:

(1)     they are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose Guaranty Association protects insureds who live outside that state);

(2)     the insurer was not authorized to do business in this state;

(3)     their policy was issued by an organization which is not a member of the Pennsylvania Life and Health Insurance Guaranty Association.

The Association also does not provide coverage for:

(1)     any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;

(2)     any policy of reinsurance (unless an assumption certificate was issued);

(3)     interest rate yields that exceed an average rate as more fully described in Section 3 of the Act;

(4)     dividends;

(5)     credits given in connection with the administration of a policy by a group contract holder;

(6)     employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them).

## LIMITS ON AMOUNT OF COVERAGE

The act also limits the amount the Association is obligated to pay out. The Association cannot pay more than what the insurance company would owe under a policy or contract. With respect to any one insured individual, regardless of the number of policies or contracts, the Association will pay not more than $300,000 in life insurance death benefits and present value annuity benefits, including net cash surrender and net cash withdrawal values. Within this overall limit, the Association will not pay more than $100,000 in cash surrender values for life insurance, $100,000 in cash surrender values for annuity benefits, $300,000 in life insurance death benefits or $300,000 in present value of annuities --again, no matter how many policies and contracts there were with the same company, and no matter how many different types of coverages.

The Association will not pay more than $5,000,000 in benefits to any one contractholder under any one unallocated annuity contract. There are no limits on the benefits the Association will pay with respect to any one group, blanket or individual accident and health insurance policy.

EXHIBIT A

## NOTICE

Benefits paid under the Accelerated Benefits provision will reduce the Death Benefit payable for life insurance.

Benefits payable under the Accelerated Benefits provision may be taxable. If so, the Employee or the Employee's beneficiary may incur a tax obligation. As with all tax matters, an Employee should consult with a personal tax advisor to assess the impact of this benefit. Accelerated Benefits are not payable if life insurance coverage under the Policy is not in force.

TL-004788

**EXHIBIT A**

LIFE INSURANCE COMPANY OF NORTH AMERICA
1601 CHESTNUT STREET                                      GROUP POLICY
PHILADELPHIA, PA 19192-2235
(800) 732-1603          TDD (800) 552-5744
A STOCK INSURANCE COMPANY

**POLICYHOLDER:**  TRUSTEE OF THE GROUP INSURANCE
TRUST FOR EMPLOYERS IN THE
SERVICES INDUSTRY

**SUBSCRIBER:**  Pennsylvania State System of Higher Education

**POLICY NUMBER:**  FLX-980054

**POLICY EFFECTIVE DATE:**  January 1, 2007

**POLICY ANNIVERSARY DATE:**  January 1

This Policy describes the terms and conditions of coverage. It is issued in Delaware and shall be governed by its laws. The Policy goes into effect on the Policy Effective Date, 12:01 a.m. at the Policyholder's address.

In return for the required premium, the Insurance Company and the Policyholder have agreed to all the terms of this Policy.

Susan L. Cooper, Secretary                    Karen S. Rohan, President

TL-004700

**EXHIBIT A**

## TABLE OF CONTENTS

SCHEDULE OF BENEFITS ........................................................................................................ 1

SCHEDULE OF BENEFITS FOR CLASS 1 ............................................................................... 2

ELIGIBILITY FOR INSURANCE ............................................................................................. 6

EFFECTIVE DATE OF INSURANCE ....................................................................................... 6

TERMINATION OF INSURANCE ............................................................................................ 7

CONTINUATION OF INSURANCE ......................................................................................... 8

LIFE INSURANCE BENEFITS ................................................................................................. 11

LIFE INSURANCE EXCLUSIONS ........................................................................................... 12

CLAIM PROVISIONS ................................................................................................................ 13

ADMINISTRATIVE PROVISIONS .......................................................................................... 15

SCHEDULE OF RATES ............................................................................................................. 17

GENERAL PROVISIONS .......................................................................................................... 20

DEFINITIONS ............................................................................................................................ 21

SCHEDULE OF AFFILIATES .................................................................................................. 23

EXHIBIT A

## SCHEDULE OF BENEFITS

**Premium Due Date**

Premiums are due in arrears on the date coinciding with the day of the Policy Anniversary Date or the last day of the month, if earlier.

**Classes of Eligible Employees**

Class 1          All active permanent Full-time Employees and permanent part-time Employees who work at least 50% of the full-time work week (normally 18.75 or more hours per week) and temporary Full-time or part-time faculty members working at least 50% of Full-time for one full academic year.

EXHIBIT A

## SCHEDULE OF BENEFITS FOR CLASS 1

**Eligibility Waiting Period**

The Eligibility Waiting Period is the period of time the Employee must be in Active Service to be eligible for coverage. It will be extended by the number of days the Employee is not in Active Service.

For Employees hired on or
before the Policy Effective Date:          No Waiting Period.

For Employees hired after
the Policy Effective Date:          No Waiting Period.

## LIFE INSURANCE BENEFITS

**Employee Benefits**

Amount of Insurance          An amount elected in units of $10,000
    Guaranteed Issue Amount:          the greater of a) or b) below:
                  a) $100,000, or
                  b) an amount equal to the Life Insurance Benefit in effect on
                     the termination date of the Prior Plan
    Maximum Benefit:          the lesser of 5 times Annual Compensation rounded to the next
                higher $10,000 if not already a multiple thereof, or $500,000

Age Based Reductions          Life Insurance Benefit for an Employee age 70 and over will
                reduce to:
                65% of the Life Insurance Benefit at age 70
                45% of the Life Insurance Benefit at age 75
                30% of the Life Insurance Benefit at age 80

Continuation Options

  For Layoff
    Maximum Benefit Period:          1 month

  For Family Medical Leave
    Maximum Benefit Period:          to the end of 6 months or, the period required by applicable state
                or federal law.

  For an Employer approved Leave of Absence or Sabbatical Leave:
    Maximum Benefit Period          to the end of 12 months following the month in which the leave
                of absence began, or the date the leave ends, if earlier.

  For an Employer approved, unpaid Leave of Absence:
    Maximum Benefit Period          12 months, or if earlier, the end of such leave.

**EXHIBIT A**

| Waiver of Premium | |
|---|---|
| Benefit Waiting Period | 6 months from the date the Employee's Active Service ends |
| Maximum Benefit Period | To Age 65 |
| Applicable Coverages | Life Insurance Benefits for the Employee, his or her Spouse and Dependent Children, if any. |

| Portability Options | |
|---|---|
| For Employees | See the Former Employee and Spouse of Former Employee sections in this Schedule of Benefits for the amounts of insurance an Insured is eligible to continue under this option. |

| Terminal Illness Benefit | 50% of Life Insurance Benefits in force on the date the Insured is determined by the Insurance Company to be Terminally Ill, subject to a Maximum Benefit of $250,000. |
|---|---|

### Increases and Decreases in Coverage

An eligible Employee may enroll for or increase his or her Voluntary Term Life Insurance Benefits, at any time, only if he or she satisfies the Insurability Requirement. Any amount the Insurance Company approves is effective on the date the Insurance Company agrees in writing to insure the Employee.

An Employee may reduce Insurance Benefits at any time. The reduced amount will be effective on the date the Insurance Company receives the completed change form.

### Spouse Benefits

| Amount of Insurance | Units of $10,000 |
|---|---|
| Guaranteed Issue Amount: | the greater of a) or b) below: |
| | a)  $10,000, or |
| | b)  an amount equal to the Life Insurance Benefit in effect on the termination date of the Prior Plan |
| Maximum Benefit: | $100,000 |

The amount of Spousal coverage cannot exceed the amount of Employee coverage.

| Portability Options | |
|---|---|
| For Spouse | See the Former Spouse section in this Schedule of Benefits for the amounts of insurance an Insured is eligible to continue under this option. |

| Terminal Illness Benefit | 50% of Life Insurance Benefits in force on the date the Insured is determined by the Insurance Company to be Terminally Ill. |
|---|---|

EXHIBIT A

**Dependent Child Benefits**

Amount of Insurance                         Option 1 - $5,000
                                            Option 2 - $10,000
    Maximum Benefit:    $10,000

All Dependent Child benefits are Guaranteed Issue.

Portability Options
    For Dependent Children    See the Former Dependent Child section in this Schedule of Benefits for the amounts of insurance an Insured is eligible to continue under this option.

**Former Employee Benefits**

Amount of Insurance                         An amount elected subject to the Maximum Benefit amount for Life Insurance Benefits allowable to an Employee, less any amount of conversion insurance issued under the Conversion Privilege for Life Insurance.

                                            Any amount elected in excess of the Life Insurance Benefits in effect on the date he or she no longer qualifies as an Employee will be effective on the date the Insurance Company agrees in writing to insure him or her.

    Maximum Benefit Period       To Age 70

Terminal Illness Benefit                    50% of Life Insurance Benefits in force on the date the Insured is determined by the Insurance Company to be Terminally Ill, subject to a Maximum Benefit of $250,000.

**Spouse of Former Employee Benefits**

Amount of Insurance                         An amount elected subject to the Maximum Benefit amount for Life Insurance Benefits available to a Spouse.

                                            Any amount elected in excess of the Life Insurance Benefits in effect on the date the Employee's employment with the Employer ends will be effective on the date the Insurance Company agrees in writing to insure him or her.

    Maximum Benefit Period       To Age 70

Terminal Illness Benefit                    50% of Life Insurance Benefits in force on the date the Insured is determined by the Insurance Company to be Terminally Ill.

EXHIBIT A

**Former Spouse Benefits**

| | |
|---|---|
| Amount of Insurance | An amount elected subject to the Maximum Benefit amount for Life Insurance Benefits available to a Spouse. |
| | Any amount elected in excess of the Life Insurance Benefits in effect on the date he or she no longer qualifies as a Spouse will be effective on the date the Insurance Company agrees in writing to insure him or her. |
| Maximum Benefit Period | To Age 70 |
| Terminal Illness Benefit | 50% of Life Insurance Benefits in force on the date the Insured is determined by the Insurance Company to be Terminally Ill. |

**Former Dependent Child Benefits**

| | |
|---|---|
| Amount of Insurance | Units of $25,000 |
| Guaranteed Issue Amount: | $50,000 |
| Maximum Benefit: | $50,000 |
| Maximum Benefit Period | To Age 70 |

TL 004774

5

**EXHIBIT A**

## ELIGIBILITY FOR INSURANCE

**Classes of Eligible Persons**
A person may be insured only once under the Policy as an Employee, Spouse or Dependent Child, even though he or she may be eligible under more than one class.

**Employee**
An Employee in one of the Classes of Eligible Employees shown in the Schedule of Benefits is eligible to be insured on the Policy Effective Date or the day after he or she completes the applicable Eligibility Waiting Period, if later.

If a person has previously converted his or her insurance under the Policy, he or she will not become eligible until the converted policy is surrendered.  This does not apply to any amount of insurance that was previously converted under the Policy due to a reduction in the Employee's Life Insurance Benefits based on age or a change in class unless those conditions no longer affect the amount of coverage available to the Employee.

Except as noted in the Reinstatement Provision, if an Employee terminates coverage and later wishes to reapply, or if a former Employee is rehired, a new Eligibility Waiting Period must be satisfied.  An Employee is not required to satisfy a new Eligibility Waiting Period if insurance ends because he or she is no longer in a Class of Eligible Employees, but continues to be employed by the Employer, and within one year becomes a member of an eligible class.

**Spouse**
If an Insured is eligible to elect Spouse coverage, the Spouse is eligible to be insured on the date the Employee is eligible or the date he or she becomes a Spouse of an Employee, if later.  The eligible Employee must be insured in order to elect spouse coverage.

For the purpose of eligibility, the Spouse must be the lawful Spouse of the Employee and not legally separated or divorced from, or widowed by the Employee.  A Spouse must be under age 70 to be eligible.

**Dependent Child**
If an Insured is eligible to elect Dependent Child coverage, the Dependent Child is eligible to be insured on the date the Insured is eligible or on the date the child qualifies as a Dependent Child, if later.

In no event will a Dependent Child be eligible to become insured more than once under the Policy.

TL 004710

## EFFECTIVE DATE OF INSURANCE

An Employee who is required to contribute to the cost of this insurance may elect insurance for himself or herself and an eligible Spouse or Dependent Child only by authorizing payroll deduction in a form approved by the Employer and the Insurance Company.  The effective date of this insurance depends on the date and amount of insurance elected.

If an individual elects coverage within 31 days after becoming eligible to enroll, or for any increases, the Guaranteed Issue Amount will be effective on the latest of the following dates:
1.     The Policy Effective Date.
2.     The date payroll deduction is authorized for this insurance.
3.     The date the Employer or Insurance Company receives the completed enrollment form.

6

**EXHIBIT A**

If Employee or Spouse coverage is elected in an amount that exceeds the Guaranteed Issue Amount or an enrollment form is received more than 31 days after becoming eligible to elect coverage, this insurance will be effective on the date the Insurance Company agrees in writing to insure that eligible person. The Insurance Company will require the eligible person to satisfy the Insurability Requirement before it agrees to insure him or her.

If coverage for a Dependent Child is in force and another Dependent Child becomes eligible, coverage for that child is effective on the date the child qualifies as a Dependent Child.

If an eligible Employee is not in Active Service on the date insurance would otherwise be effective, it will be effective on the date he or she returns to Active Service.

If an eligible Spouse or Dependent Child is:
1.    an inpatient in a hospital, hospice, rehabilitation or convalescence center, or custodial care facility; or
2.    confined to his or her home under the care of a Physician

on the date insurance would otherwise be effective, it will be effective on the date he or she is no longer an inpatient in these facilities or confined at home.  If such Spouse or Dependent Child was covered by the Prior Plan immediately prior to the Policy Effective Date, this provision will not apply to the amount of coverage in effect as of the Policy Effective Date, but will apply to any increase in coverage.

TL-004712

**Takeover Provision**
*Special Terms Applicable to Previously Insured Employees Not in Active Service*
Employees not in Active Service on the Policy Effective Date are not covered under the Policy. However, the Insurance Company agrees to provide a death benefit equal to the lesser of:
1.    the amount due under this Policy (without regard to the Active Service provision), or
2.    the amount that would have been due under the Prior Plan had it remained in force.

The benefit amount will be reduced by any amount paid by the Prior Plan, or that would have been paid had this Policy not been issued and had timely filing of the claim been made under the Prior Plan.

These special terms will end on the earliest of the following dates:
1.    the date the Employee meets the Active Service requirements;
2.    the date insurance terminates for one of the reasons stated in the Termination of Insurance provision;
3.    12 months after the Policy Effective Date; or
4.    the last day the Employee would have been covered under the Prior Plan if that plan was still in force.

TL-009020

## TERMINATION OF INSURANCE

An Insured's coverage will end on the earliest of the following dates:
1.    the date the Employee is eligible for coverage under a plan intended to replace this coverage;
2.    the date the Policy is terminated by the Insurance Company;
3.    the last day of the month in which the Insured is no longer in an eligible class;
4.    the date coinciding with the end of the last period for which premiums are paid;
5.    the last day of the month in which the Employee is no longer in Active Service;
6.    for an Employee, Spouse and Dependent Child, the date the Employer cancels participation under the Policy; and
7.    the date coverage for the Employee ends, for any insured Spouse and Dependent Child.
TL-004714

**EXHIBIT A**

## CONTINUATION OF INSURANCE

If an Employee is no longer in Active Service, he or she may be eligible to continue insurance. The following provisions explain the continuation options available under the Policy. Please see the Schedule of Benefits to determine the applicability of these benefits on a class level.

**Continuation for Layoff, Temporary Leave of Absence, Sabbatical Leave of Absence or Family Medical Leave**

If an Employee's Active Service ends due to a layoff, Employer approved unpaid leave of absence, or family medical leave of absence, insurance will continue for up to the Maximum Benefit Period shown in the Schedule of Benefits, if the required premium is paid.

Employment will not be deemed to continue and insurance cannot be continued during a sabbatical or leave of absence unless the sabbatical or the leave for the Employee is set forth in a written document that is dated on or before the leave is to start and shows that the Employee is scheduled to return to Active Service.

If an Employee is on leave, the amount of insurance and premium will be based on the amount of insurance in effect just prior to the start of the leave.

**Waiver of Premium**

If an Employee is under age 60 and his or her Active Service ends due to Disability, Life Insurance Benefits as shown in the Schedule of Benefits will continue until the end of the earliest of the following dates.

1.      The date the Employee is no longer Disabled.
2.      The date he or she no longer qualifies for Waiver of Premium.
3.      The day after the period for which premiums are paid.
4.      The date the Maximum Benefit Period for this benefit, if any, ends.

If an Employee dies while premiums are waived, the Insurance Company will pay a Death Benefit only if due proof of continuous Disability is received within one year of his or her death.

In order to qualify for Waiver of Premium an Employee must submit due proof that he or she has been Disabled for the Benefit Waiting Period shown in the Schedule of Benefits for this benefit. Such proof must be submitted to the Insurance Company no later than 3 months after the Employee satisfies the Benefit Waiting Period. Premiums will be waived from the date the Insurance Company agrees in writing to waive premiums for that Employee. After premiums have been waived for 12 months, they will be waived for future periods of 12 months, if the Employee remains Disabled and submits satisfactory proof that Disability continues. Satisfactory proof must be submitted to the Insurance Company 3 months before the end of the 12 month period.

The Death Benefit will be equal to the Life Insurance Benefit in effect on the date the Employee became Disabled. However, the Life Insurance Benefit will be subject to the provisions of the Policy that reduce or terminate coverage because of age, retirement, acceleration or a change in eligible class.

*Termination of Waiver*

Insurance will end for any Employee whose premiums are waived on the earliest of the following dates.

1.      The date he or she is no longer Disabled.
2.      The date he or she refuses to submit to any physical examination required by the Insurance Company.
3.      The last day of the 12 month period of Disability during which he or she fails to submit satisfactory proof of continued Disability.
4.      The date the Maximum Benefit Period for this benefit, if any, ends.

8

**EXHIBIT A**

**Portability Options**
*For Employees*

If an Employee's employment with the Employer ends prior to age 70, Life Insurance Benefits may be continued. Coverage may be continued up to the Maximum Benefit shown in the Schedule of Benefits for this option.

The Employee must apply to the Insurance Company and pay the required premium. If the Employee continues coverage, Spouse or Dependent Child coverage may also be continued by the Employee. The Spouse or Dependent Child must be covered under the Policy on the date coverage would otherwise end. The application must be submitted:

a.    within 31 days of the Employee's termination of employment; or
b.    during the time that the Employee has to exercise the conversion privilege as a result of termination of employment.

Coverage under this option may not be elected at a later date.

When applying for this option, the Employee must name a beneficiary. Any beneficiary named previously under the Policy is no longer in effect. If there is no named or surviving beneficiary, Death Benefits will be paid to the first surviving class of the following living relatives:

a.    spouse;
b.    child or children;
c.    mother or father;
d.    brothers or sisters; or
e.    the executors or administrators of the Insured's estate.

When coverage is continued under this option, the Employee becomes a Former Employee. The Spouse becomes a Spouse of a Former Employee. The Dependent Child becomes a Dependent Child of a Former Employee.

If the Former Employee later acquires a Spouse or Dependent Child, he or she may elect coverage for them. The Former Employee must apply to the Insurance Company and pay the required premium. Coverage for the Spouse or Dependent Child will be effective on the date the Insurance Company agrees in writing to insure them. The Insurance Company may require that the Spouse or Dependent Child satisfy the Insurability Requirement before it agrees to insure him or her.

Coverage will end on the earliest of the following dates.

a.    The date the Insurance Company cancels coverage for all Former Employees.
b.    The end of the period for which premiums are paid.
c.    The date an Insured reaches age 70.
d.    The date the Maximum Benefit Period shown in the Schedule of Benefits for this option ends.

Also, coverage for any Dependent Child will end on any of the dates listed above or when he or she no longer qualifies as a Dependent Child, if earlier.

*For Spouses*

If prior to age 70, a Spouse is:

a.    legally separated, divorced; or
b.    widowed

from an insured Employee or Former Employee, Life Insurance Benefits may be continued. Coverage may be continued up to the Maximum Benefit shown in the Schedule of Benefits for this option. The Spouse must apply to the Insurance Company and pay the required premium.

**EXHIBIT A**

A Spouse who continues coverage may also continue coverage for a Dependent Child. The Dependent Child must be covered under the Policy on the date coverage would otherwise end. A Spouse must elect to continue insurance under this option within 31 days after coverage ends. Coverage may not be elected at a later date.

When applying for this option, a Spouse must name a beneficiary. Any beneficiary named previously under the Policy is no longer in effect. If there is no named or surviving beneficiary, Death Benefits will be paid to the first surviving class of the following living relatives:

a.      spouse;
b.      child or children;
c.      mother or father;
d.      brothers or sisters; or
e.      the executors or administrators of the Spouse's estate.

When coverage is continued under this option, the Spouse becomes a Former Spouse. A separate certificate of insurance will be issued to the Former Spouse. Coverage will be effective on the date after coverage as a Spouse ends if the required premium is paid.

Coverage will end on the earliest of the following dates.

a.      The date the Insurance Company cancels coverage for all Former Spouses.
b.      The end of the period for which premiums are paid.
c.      The date the Former Spouse reaches age 70.
d.      The date the Maximum Benefit Period shown in the Schedule of Benefits for this option ends.

Also, coverage for a Dependent Child will end on any of the dates listed above or when he or she no longer qualifies as a Dependent Child, if earlier.

*For Dependent Children*

If a Dependent Child is insured under the Policy and is at least 19 years of age, Life Insurance Benefits may be continued under this option. Coverage may be continued up to the Maximum Benefit shown in the Schedule of Benefits for this option.

The Dependent Child must apply to the Insurance Company and pay the required premium. If a Dependent Child does not elect to continue insurance within 31 days after reaching age 19; or the date he or she no longer qualifies as a Dependent Child, if later, coverage under this option may not be elected at a later date.

When applying for this option, a Dependent Child must name a beneficiary. Any beneficiary named previously under the Policy is no longer in effect. If there is no named or surviving beneficiary, Death Benefits will be paid to the first surviving class of the following living relatives:

a.      spouse;
b.      child or children;
c.      mother or father;
d.      brothers or sisters; or
e.      the executors or administrators of the Dependent Child's estate.

When a Dependent Child continues coverage under this option, he or she becomes a Former Dependent Child. A separate certificate of insurance will be issued to the Former Dependent Child. Coverage for a Former Dependent Child will be effective on the following dates.

a.      For any Guaranteed Issue Amount, immediately following the date his or her coverage as a Dependent Child ends, provided the Insurance Company receives the required premium.
b.      For any amount of insurance that exceeds the Guaranteed Issue Amount, the date the Insurance Company agrees in writing to insure him or her. The Insurance Company will require the Former Dependent Child to satisfy the Insurability Requirement before it agrees to insure him or her.

**EXHIBIT A**

Coverage will end on the earliest of the following dates.
a.     The date the Insurance Company cancels coverage for all Former Dependent Children.
b.     The end of the period for which premiums are paid.
c.     The date the Former Dependent Child is age 70.
d.     The date the Maximum Benefit Period shown in the Schedule of Benefits for this option ends,

TL-001716 as modified by TL-009330

## DESCRIPTION OF BENEFITS

The following provisions explain the benefits available under the Policy.  Please see the Schedule of Benefits for the applicability of these benefits on a class level.

## LIFE INSURANCE BENEFITS

**Death Benefit**
If an Insured dies, the Insurance Company will pay the Life Insurance Benefit in force for that Insured on the date of his or her death.

TL-004730

**Accelerated Benefits**
Any benefits payable under this Accelerated Benefits provision will reduce the Death Benefit payable for Life Insurance.  Any automatic increases in Life Insurance Benefits will end when benefits are payable under this provision.

*Terminal Illness Benefit*
The Insurance Company will pay a Terminal Illness Benefit to an Insured who has been determined by the Insurance Company to be Terminally Ill.

The Terminal Illness Benefit is payable only once in an Insured's lifetime.

*Determination of Terminal Illness*

For the purpose of determining the existence of a Terminal Illness, the Insurance Company will require the Insured submit the following proof.
1.     A written diagnosis and prognosis by two Physicians licensed to practice in the United States.
2.     Supportive evidence satisfactory to the Insurance Company, including but not limited to radiological, histological or laboratory reports documenting the Terminal Illness.

The Insurance Company may require, at its expense, an examination of the Insured and a review of the documented evidence by a Physician of its choice.

"Terminal Illness" means a person has a prognosis of 12 months or less to live, as diagnosed by a Physician.

TL-004748

**Conversion Privilege for Life Insurance**
If coverage for an Insured ends for any reason, except for non-payment of premium, he or she may apply for a conversion policy of life insurance.

The conversion insurance may be a type of life insurance currently being offered for conversion by the Insurance Company at the Insured's age and in the amount requested.  It may not be term insurance and it may not be for an amount greater than the Life Insurance Benefits in force under the Policy.  Conversion life insurance will not provide accident, disability or other benefits.

**EXHIBIT A**

However, if coverage ends because the Policy is terminated or amended to terminate any class of Insureds, or the Employer cancels participation under the Policy, coverage cannot be converted unless the individual has been insured under the Policy for at least 3 years. In this case, the amount of conversion insurance will be the lesser of the Life Insurance Benefit in force under the Policy, or $10,000.

To apply for conversion insurance, the Insured must within 31 days after coverage under the Policy ends, submit an application to the Insurance Company and pay the required premium. Evidence of insurability is not required. Premium for the conversion insurance will be based on the age and class of risk of the Insured and the type and amount of coverage issued.

Conversion insurance will become effective on the 31st day after the date coverage under the Policy ends, if the application is received by the Insurance Company and the required premium is paid on that date.

If the Insured dies during the 31 day conversion period, the Death Benefit will be paid under the Policy regardless of whether he or she applied for conversion insurance. If a conversion policy is issued, it will be in exchange for any benefits payable for that type and amount of insurance under the Policy.

*Extension of Conversion Period*
If an Insured is eligible for conversion insurance and is not notified of this right at least 15 days prior to the end of the 31 day conversion period, the conversion period will be extended. The Insured will have 15 days from the date notice is given to apply for conversion insurance. In no event will the conversion period be extended beyond 90 days. Notice, for the purpose of this section, means written notice presented to the Insured by the Employer or mailed to the Insured's last known address as reported by the Employer.

If the Insured dies during the extended conversion period, but more than 31 days after his or her coverage under the Policy terminates, Life Insurance Benefits will not be paid under the Policy. If the Insured's application for conversion insurance is received by the Insurance Company and the required premium is paid, Life Insurance Benefits will be payable under the conversion insurance.

*Prior Conversion Limitation*
If an Insured is covered under a life insurance conversion policy previously issued by the Insurance Company, he or she will not be eligible for this Conversion Privilege unless the prior coverage has ended. This does not apply to any amount of insurance that was previously converted under the Policy due to a reduction in the Insured's Life Insurance Benefits based on age or a change in class.

TL-004750

## LIFE INSURANCE EXCLUSIONS

If an Insured commits suicide, while sane or insane, within 2 years from the date his or her insurance under the Policy becomes effective, Life Insurance Benefits will be limited to a refund of the premiums paid on the Insured's behalf. The suicide exclusion applies from the effective date of any additional benefits or increases in Life Insurance Benefits.

Except for any amount of benefits in excess of the Prior Plan's benefits, this exclusion will not apply to any person covered under the Prior Plan for more than two years. If a person was not insured for two years under the Prior Plan, credit will be given for the time he or she was insured.

If a Dependent Child commits suicide and is survived by other Dependent Children covered under the same certificate, no refund of premiums will be paid.

TL-004752

**EXHIBIT A**

## CLAIM PROVISIONS

**Notice of Claim**

Written notice, or notice by any other electronic/telephonic means authorized by the Insurance Company, must be given to the Insurance Company within 31 days after a covered loss occurs or begins or as soon as reasonably possible. If written notice, or notice by any other electronic/telephonic means authorized by the Insurance Company, is not given in that time, the claim will not be invalidated or reduced if it is shown that notice was given as soon as reasonably possible. Notice can be given at our home office in Philadelphia, Pennsylvania or to our agent. Notice should include the Employer's Name, the Policy Number and the claimant's name and address.

Written notice or any other electronic/telephonic means authorized by the Insurance Company of a diagnosis of a Terminal Illness on which claim is based must be given to us within 60 days after the diagnosis. If notice is not given in that time, the claim will not be invalidated or reduced if it is shown that written notice or any other electronic/telephonic means authorized by the Insurance Company was given as soon as reasonably possible.

**Claim Forms**

When the Insurance Company receives notice of claim, the Insurance Company will send claim forms for filing proof of loss. If claim forms are not sent within 15 days after notice is received by the Insurance Company, the proof requirements will be met by submitting, within the time required under the "Proof of Loss" section, written proof, or proof by any other electronic/telephonic means authorized by the Insurance Company, of the nature and extent of the loss.

**Claimant Cooperation Provision**

Failure of a claimant to cooperate with the Insurance Company in the administration of the claim may result in termination of the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

**Insurance Data**

The Employer is required to cooperate with the Insurance Company in the review of claims and applications for coverage. Any information the Insurance Company provides in these areas is confidential and may not be used or released by the Employer if not permitted by applicable privacy laws.

**Proof of Loss**

Written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, must be given to the Insurance Company within 90 days after the date of the loss for which a claim is made. If written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, is not given in that 90 day period, the claim will not be invalidated nor reduced if it is shown that it was given as soon as was reasonably possible. In any case, written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, must be given not more than one year after that 90 day period. If written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, is provided outside of these time limits, the claim will be denied. These time limits will not apply while the person making the claim lacks legal capacity.

Written proof, or any other electronic/telephonic means authorized by the Insurance Company, of loss for Accelerated Benefits must be furnished 90 days after the date of diagnosis. This proof must describe the occurrence, character and diagnosis for which claim is made.

In case of claim for any other loss, proof must be furnished within 90 days after the date of such loss.

If it is not reasonably possible to submit proof of loss within these time periods, the Insurance Company will not deny or reduce any claim if proof is furnished as soon as reasonably possible. Proof must, in any case, be furnished not more than a year later, except for lack of legal capacity.

13

EXHIBIT A

**Time of Payment**
Benefits due under the Policy for a loss, other than a loss for which the Policy provides installment payments, will be paid immediately upon receipt of due written proof of such loss.

Subject to the receipt of satisfactory written proof of loss, all accrued benefits for loss for which the Policy provides installments will be paid monthly; any balance remaining unpaid upon the termination of liability will be paid immediately upon receipt of due written proof, unless otherwise stated in the Description of Benefits.

**To Whom Payable**
Death Benefits will be paid to the Insured's named beneficiary, if any, on file at the time of payment. If there is no named beneficiary or surviving beneficiary, Death Benefits will be paid to the first surviving class of the following living relatives: spouse; child or children; mother or father; brothers or sisters; or to the executors or administrators of the Insured's estate. The Insurance Company may reduce the amount payable by any indebtedness due.

All benefits payable under the Accelerated Benefits section are payable to the Insured, if living. If the Insured dies prior to the payment of an eligible claim for an Accelerated Benefit, benefits will be paid in accordance with the provisions applicable to the payment of Life Insurance proceeds, unless the Insured has directed us otherwise in writing. However, any payment made by us prior to notice of the Insured's death shall discharge us of any benefit that was paid.

All other benefits, unless otherwise stated in the Policy, will be payable to the Insured or the certificate owner if other than the Insured.

Any other accrued benefits which are unpaid at the Insured's death may, at the Insurance Company's option, be paid either to the Insured's beneficiary or to the executor or administrator of the Insured's estate.

If the Insurance Company pays benefits to the executor or administrator of the Insured's estate or to a person who is incapable of giving a valid release, the Insurance Company may pay up to $1,000 to a relative by blood or marriage whom it believes is equitably entitled. This good faith payment satisfies the Insurance Company's legal duty to the extent of that payment.

**Change of Beneficiary**
The Insured may change the beneficiary at any time by giving written notice to the Employer or the Insurance Company. The beneficiary's consent is not required for this or any other change which the Insured may make unless the designation of beneficiary is irrevocable.

No change in beneficiary will take effect until the form is received by the Employer or the Insurance Company. When this form is received, it will take effect as of the date of the form. If the Insured dies before the form is received, the Insurance Company will not be liable for any payment that was made before receipt of the form.

**Physical Examination and Autopsy**
The Insurance Company, at its expense, will have the right to examine any person for whom a claim is pending as often as it may reasonably require. The Insurance Company may, at its expense, require an autopsy unless prohibited by law.

**Legal Actions**
No action at law or in equity may be brought to recover benefits under the Policy less than 60 days after written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, has been furnished as required by the Policy. No such action shall be brought more than 3 years after the time satisfactory proof of loss is required to be furnished.

**EXHIBIT A**

**Time Limitations**
If any time limit stated in the Policy for giving notice of claim or proof of loss, or for bringing any action at law or in equity, is less than that permitted by the law of the state in which the Employee lives when the Policy is issued, then the time limit provided in the Policy is extended to agree with the minimum permitted by the law of that state.

**Physician/Patient Relationship**
The Insured will have the right to choose any Physician who is practicing legally.  The Insurance Company will in no way disturb the Physician/patient relationship.

TL-004724

## ADMINISTRATIVE PROVISIONS

**Premiums**
The premiums for this Policy will be based on the rates currently in force, the plan and the amount of insurance in effect.

If the Insured's coverage amount is reduced due to acceleration of his or her Death Benefit, his or her premium will be based on the amount of coverage he or she has in force on the day before the reduction took place.  If the Insured's coverage amount is reduced due to his or her attained age, premium will be based on the amount of coverage in force on the day after the reduction took place.

**Changes in Premium Rates**
The premium rates may be changed by the Insurance Company from time to time with at least 31 days advance written notice.  No change in rates will be made until 36 months after the Policy Effective Date. An increase in rates will not be made more often than once in a 12 month period.  However, the Insurance Company reserves the right to change the rates even during a period for which the rate is guaranteed if any of the following events take place.
1.   The terms of the Policy change.
2.   A division, subsidiary, affiliated company or eligible class is added or deleted from the Policy.
3.   There is a change in the factors bearing on the risk assumed.
4.   Any federal or state law or regulation is amended to the extent it affects the Insurance Company's benefit obligation.
5.   The Insurance Company determines that the Employer has failed to promptly furnish any necessary information requested by the Insurance Company, or has failed to perform any other obligations in relation to the Policy.

If an increase or decrease in rates takes place on a date that is not a Premium Due Date, a pro rata adjustment will apply from the date of the change to the next Premium Due Date.

**Reporting Requirements**
The Employer must, upon request, give the Insurance Company any information required to determine who is insured, the amount of insurance in force and any other information needed to administer the plan of insurance.

**Payment of Premium**
The first premium is due on the Policy Effective Date.  After that, premiums will be due monthly unless the Employer and the Insurance Company agree on some other method of premium payment.

If any premium is not paid when due, the plan will be canceled as of the Premium Due Date, except as provided in the Policy Grace Period section.

**EXHIBIT A**

### Notice of Cancellation

The Employer or the Insurance Company may cancel the Policy as of any Premium Due Date by giving 31 days advance written notice. If a premium is not paid when due, the Policy will automatically be canceled as of the Premium Due Date, except as provided in the Policy Grace Period section.

### Policy Grace Period

A Policy Grace Period of 31 days will be granted for the payment of the required premiums under this Policy. This Policy will be in force during the Policy Grace Period. The Employer is liable to the Insurance Company for any unpaid premium for the time this Policy was in force.

### Grace Period for the Insured

If the required premium is not paid on the Premium Due Date, there is a 31 day grace period after each premium due date after the first. If the required premium is not paid during the grace period, insurance will end on the last day for which premium was paid.

If benefits are paid during the Grace Period for the Insured, the Insurance Company will deduct any overdue premium from the proceeds payable under the Policy.

TL-004720

16

**EXHIBIT A**

## SCHEDULE OF RATES

The following monthly rates apply to all Classes of Eligible Persons unless otherwise indicated.

### FOR EMPLOYEE BENEFITS

#### Voluntary Life Insurance

Monthly Rates are based on units of $1,000

#### Non-Smoker Rates

| | | | |
|---|---|---|---|
| Under Age 20 | $.020 | Age 60 - 64 | $.260 |
| Age 20 - 24 | $.020 | Age 65 - 69 | $.501 |
| Age 25 - 29 | $.024 | Age 70 - 74 | $.940 |
| Age 30 - 34 | $.032 | Age 75 - 79 | $1.56 |
| Age 35 - 39 | $.036 | Age 80 - 84 | $1.56 |
| Age 40 - 44 | $.044 | Age 85 - 89 | $1.56 |
| Age 45 - 49 | $.074 | Age 90 - 94 | $1.56 |
| Age 50 - 54 | $.122 | Age 95 and over | $1.56 |
| Age 55 - 59 | $.195 | | |

#### Smoker Rates

| | | | |
|---|---|---|---|
| Under Age 20 | $.032 | Age 60 - 64 | $.594 |
| Age 20 - 24 | $.043 | Age 65 - 69 | $1.16 |
| Age 25 - 29 | $.052 | Age 70 - 74 | $2.06 |
| Age 30 - 34 | $.059 | Age 75 - 79 | $2.06 |
| Age 35 - 39 | $.085 | Age 80 - 84 | $2.06 |
| Age 40 - 44 | $.100 | Age 85 - 89 | $2.06 |
| Age 45 - 49 | $.150 | Age 90 - 94 | $2.06 |
| Age 50 - 54 | $.230 | Age 95 and over | $2.06 |
| Age 55 - 59 | $.430 | | |

A change in rates due to a change in the Employee's age will become effective on the Date coinciding with or following the Employee's birthday.

### FOR SPOUSE BENEFITS

#### Voluntary Life Insurance

Monthly Rates are based on units of $1,000

#### Non-Smoker Rates

| | | | |
|---|---|---|---|
| Under Age 20 | $.020 | Age 45 - 49 | $.074 |
| Age 20 - 24 | $.020 | Age 50 - 54 | $.122 |
| Age 25 - 29 | $.024 | Age 55 - 59 | $.195 |
| Age 30 – 34 | $.032 | Age 60 - 64 | $.260 |
| Age 35 - 39 | $.036 | Age 65 - 69 | $.501 |
| Age 40 - 44 | $.044 | | |

EXHIBIT A

**Smoker Rates**

| | | | |
|---|---|---|---|
| Under Age 20 | $.032 | Age 45 - 49 | $.150 |
| Age 20 - 24 | $.043 | Age 50 - 54 | $.230 |
| Age 25 - 29 | $.052 | Age 55 - 59 | $.430 |
| Age 30 - 34 | $.059 | Age 60 - 64 | $.594 |
| Age 35 - 39 | $.085 | Age 65 - 69 | $1.16 |
| Age 40 - 44 | $.100 | | |

Spouse rates are based on the spouse's date of birth.  A change in rates due to a change in the Spouse's age will become effective on the Date coinciding with or following the Spouse's birthday.

FOR DEPENDENT CHILD BENEFITS

**Voluntary Life Insurance**        Option 1 - $.12 Per $5,000
                                     Option 2 - $.24 Per $10,000

FOR FORMER EMPLOYEE BENEFITS

Monthly Rates are based on units of $1,000.

| | | | |
|---|---|---|---|
| Under Age 20 | $.153 | Age 45 - 49 | $.3840 |
| Age 20 - 24 | $.144 | Age 50 - 54 | $.7260 |
| Age 25 - 29 | $.153 | Age 55 - 59 | $1.347 |
| Age 30 - 34 | $.177 | Age 60 - 64 | $2.461 |
| Age 35 - 39 | $.190 | Age 65 - 69 | $4.065 |
| Age 40 - 44 | $.243 | | |

A change in rates due to a change in the Former Employee's age will become effective on the Date coinciding with or following the Former Employee's birthday.

FOR FORMER SPOUSES OR SPOUSES OF FORMER EMPLOYEE BENEFITS

Monthly Rates are based on units of $1,000.

| | | | |
|---|---|---|---|
| Under Age 20 | $.153 | Age 45 - 49 | $.3840 |
| Age 20 - 24 | $.144 | Age 50 - 54 | $.7260 |
| Age 25 - 29 | $.153 | Age 55 - 59 | $1.347 |
| Age 30 - 34 | $.177 | Age 60 - 64 | $2.461 |
| Age 35 - 39 | $.190 | Age 65 - 69 | $4.065 |
| Age 40 - 44 | $.243 | | |

Spouse rates are based on the spouse's date of birth.  A change in rates due to a change in the Spouse's age will become effective on the Date coinciding with or following the Spouse's birthday.

EXHIBIT A

## FOR FORMER DEPENDENT CHILD BENEFITS

Rates are based on $25,000 per Month.

| | | | |
|---|---|---|---|
| Under Age 20 | $2.377 | Age 45 - 49 | $9.7770 |
| Age 20 - 24 | $2.777 | Age 50 - 54 | $16.377 |
| Age 25 - 29 | $2.977 | Age 55 - 59 | $23.477 |
| Age 30 - 34 | $3.600 | Age 60 - 64 | $38.250 |
| Age 35 - 39 | $4.177 | Age 65 - 69 | $54.077 |
| Age 40 - 44 | $6.200 | | |

Rates are based on $50,000 per Month

| | | | |
|---|---|---|---|
| Under Age 20 | $4.750 | Age 45 - 49 | $19.550 |
| Age 20 - 24 | $5.550 | Age 50 - 54 | $32.750 |
| Age 25 - 29 | $5.950 | Age 55 - 59 | $46.950 |
| Age 30 - 34 | $7.200 | Age 60 - 64 | $76.500 |
| Age 35 - 39 | $8.350 | Age 65 - 69 | $108.150 |
| Age 40 - 44 | $12.400 | | |

A change in rates due to a change in the Former Dependent Child's age will become effective on the Date coinciding with or following the Former Dependent Child's birthday.

TL-004718

19

**EXHIBIT A**

## GENERAL PROVISIONS

**Entire Contract**
The entire contract will be made up of the Policy, the application of the Employer, a copy of which is attached to the Policy, and the applications, if any, of the Insureds.

**Incontestability**
All statements made by the Employer or by an Insured are representations not warranties. No statement will be used to deny or reduce benefits or as a defense to a claim, unless a copy of the instrument containing the statement has been furnished to the claimant. In the event of death or legal incapacity, the beneficiary or representative must receive the copy.

After two years from an Insured's effective date of insurance, or from the effective date of any added or increased benefits, no such statement will cause insurance to be contested except for fraud or eligibility for coverage.

**Misstatement of Age**
If an Insured's age has been misstated, the Insurance Company will adjust all benefits to the amounts that would have been purchased for the correct age.

**Policy Changes**
No change in the Policy will be valid until approved by an executive officer of the Insurance Company. This approval must be endorsed on, or attached to, the Policy. No agent may change the Policy or waive any of its provisions.

**Workers' Compensation Insurance**
The Policy is not in lieu of and does not affect any requirements for insurance under any Workers' Compensation Insurance Law.

**Certificates**
A certificate of insurance will be delivered to the Employer for delivery to Insureds. Each certificate will list the benefits, conditions and limits of the Policy. It will state to whom benefits will be paid.

**Assignment of Benefits**
The Insurance Company will not be affected by the assignment of an Insured's certificate until the original assignment or a certified copy of the assignment is filed with the Insurance Company. The Insurance Company will not be responsible for the validity or sufficiency of an assignment. An assignment of benefits will operate so long as the assignment remains in force provided insurance under the Policy is in effect. This insurance may not be levied on, attached, garnisheed, or otherwise taken for a person's debts. This prohibition does not apply where contrary to law.

**Clerical Error**
A person's insurance will not be affected by error or delay in keeping records of insurance under the Policy. If such an error is found, the premium will be adjusted fairly.

**Agency**
The Employer and Plan Administrator are agents of the Employee for transactions relating to insurance under the Policy. The Insurance Company is not liable for any of their acts or omissions.

TL-004726

EXHIBIT A

## DEFINITIONS

Please note, certain words used in this document have specific meanings. These terms will be capitalized throughout this document. The definition of any word, if not defined in the text where it is used, may be found either in this Definitions section or in the Schedule of Benefits.

**Accident**
An Accident is a sudden, unforeseeable external event that causes bodily Injury to an Insured while coverage is in force under the Policy.

**Active Service**
An Employee will be considered in Active Service with the Employer on a day which is one of the Employer's scheduled work days if either of the following conditions are met.
1.    He or she is actively at work. This means the Employee is performing his or her regular occupation for the Employer on a Full-time basis, either at one of the Employer's usual places of business or at some location to which the Employer's business requires the Employee to travel.
2.    The day is a scheduled holiday, vacation day or period of Employer approved paid leave of absence, other than disability or sick leave after 7 days.

An Employee is considered in Active Service on a day which is not one of the Employer's scheduled work days only if he or she was in Active Service on the preceding scheduled work day.

**Annual Compensation**
An Employee's annual wage or salary as reported by the Employer for work performed for the Employer as of the date the covered loss occurs. It does not include amounts received as bonuses, commissions, overtime pay or other extra compensation.

**Dependent Child**
An Employee's unmarried child who meets the following requirements.
1.    A child from live birth, who is added within 31 days of birth, to 19 years old;
2.    A child who is 19 or more years old but less than 25 years old, enrolled in a school as a full-time student and primarily supported by the Employee;
3.    A child who is 19 or more years old, primarily supported by the Employee and incapable of self-sustaining employment by reason of mental or physical handicap. Proof of the child's condition and dependence must be submitted to the Insurance Company within 31 days after the date the child ceases to qualify as a Dependent for the reasons listed above. During the next two years, the Insurance Company may, from time to time, require proof of the continuation of such condition and dependence. After that, the Insurance Company may require proof no more than once a year.

The term "child" means a child born to or legally adopted by the Employee. The term includes a child during any waiting period prior to the finalization of the child's adoption. It also means a stepchild living with and financially dependent upon the Employee.

**Disabled**
An Employee is Disabled if, because of Injury or Sickness, he or she is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience.

**Employee**
For eligibility purposes, an Employee is an employee of the Employer in one of the "Classes of Eligible Employees." Otherwise, Employee means an employee of the Employer who is insured under the Policy.

**EXHIBIT A**

**Employer**
The Employer who has subscribed to the Policyholder and for the benefit of whose Employees this policy has been issued. The Employer, named as the Subscriber on the front of this Policy, includes any affiliates or subsidiaries covered under the Policy. The Employer is acting as an agent of the Insured for transactions relating to this insurance. The actions of the Employer shall not be considered the actions of the Insurance Company.

**Full-time**
Full-time means the number of hours set by the Employer as a regular work day for Employees in the Employee's eligibility class.

**Injury**
Any accidental loss or bodily harm which results directly and independently of all other causes from an Accident.

**Insurability Requirement**
An eligible person will satisfy the Insurability Requirement for an amount of coverage on the day the Insurance Company agrees in writing to accept him or her as insured for that amount. To determine a person's acceptability for coverage, the Insurance Company will require evidence of good health and may require it be provided at the Employee's expense.

**Insurance Company**
The Insurance Company underwriting the Policy is named on the Policy cover page.

**Insured**
A person who is eligible for insurance under the Policy, for whom insurance is elected, the required premium is paid and coverage is in force under the Policy.

**Physician**
Physician means a licensed doctor practicing within the scope of his or her license and rendering care and treatment to an Insured that is appropriate for the condition and locality. The term does not include an Employee, an Employee's spouse, the immediate family (including parents, children, siblings or spouses of any of the foregoing, whether the relationship derives from blood or marriage), of an Employee or spouse, or a person living in an Employee's household.

**Prior Plan**
The Prior Plan refers to the plan of insurance providing similar benefits sponsored by the Employer in effect directly prior to the Policy Effective Date.

**Sickness**
Any physical or mental illness.

**Spouse**
The current lawful Spouse of an Employee under age 70.

TL-004708

22

EXHIBIT A

## SCHEDULE OF AFFILIATES

The following affiliates are covered under the Policy as of January 1, 2007.

Affiliate Name

Dixon University Center

Indiana University of Pennsylvania

Bloomsburg University of Pennsylvania

California University of Pennsylvania

Cheyney University of Pennsylvania

Clarion University of Pennsylvania

East Stroudsburg University of Pennsylvania

Edinboro University of Pennsylvania

Kutztown University of Pennsylvania

Lock Haven University of Pennsylvania

Mansfield University of Pennsylvania

Millersville University of Pennsylvania

Shippensburg University of Pennsylvania

Slippery Rock University of Pennsylvania

West Chester University of Pennsylvania

TL-004776

**EXHIBIT A**

## IMPORTANT CHANGES FOR STATE REQUIREMENTS

If an Employee resides in one of the following states, the provisions of the certificate are modified for residents of the following states. The modifications listed apply only to residents of that state.

**California Residents:**

### Conversion Privilege for Life Insurance

Insured Employees and Insured Spouses may convert to an individual policy of life insurance for an amount not greater than the Conversion Amount shown below when the Policy ends, without regard to any requirement that the person be insured under the policy for a specified period of time, if all of the following apply.

a. The Insured became Totally Disabled while covered for the Life Benefit of the Policy. Totally Disabled means the person is unable to perform all the material duties of any occupation for which he or she may reasonably be qualified based on training, education and experience.
b. The Insured remained Totally Disabled until the Policy ended while covered for the Life Benefit of this Policy.
c. The Policy does not provide a Waiver of Premium, Extended Death Benefit Provision or monthly payments to Totally Disabled Insureds for the Life Benefit.
d. The person meets all other conditions for converting the insurance.

Conversion Amount - Insured's life insurance amount under the Policy on the date the Policy ends minus the amount for which the Insured is insured under a group policy that provides life coverage to employees of the Insured Employee's Employer covered under this Policy. The dollar limit that applies to the amount for conversion at Policy termination does not apply.

The requirement that the Insured be covered under the Policy for the stated number of years in order to convert life insurance does not apply.

**Missouri residents:**

Regardless of any language to the contrary in the Policy, suicide is no defense to payment of life insurance benefits. However, if an Insured commits suicide within 2 years from the date their insurance under the Policy becomes effective, and the Insurance Company can show that the Insured intended suicide at the time they applied for the insurance, life insurance benefits will be limited to a refund of premium paid on the Insured's behalf.

**North Dakota residents:**

The Suicide exclusion, if any, is limited to one year from the effective date of insurance. The suicide exclusion with respect to any increase in death benefits which results from an application of the insured subsequent to the effective date, if any, is limited to one year from the effective date of the increase.

EXHIBIT A

**LIFE INSURANCE COMPANY OF NORTH AMERICA**
**PHILADELPHIA, PA 19192-2235**

We, Pennsylvania State System of Higher Education, whose main office address is Harrisburg, PA, hereby approve and accept the terms of Group Policy Number FLX-980054 issued by the LIFE INSURANCE COMPANY OF NORTH AMERICA to the TRUSTEE OF THE GROUP INSURANCE TRUST FOR EMPLOYERS IN THE SERVICES INDUSTRY.

This form is to be signed in duplicate. One part is to be retained by Pennsylvania State System of Higher Education; the other part is to be returned to the LIFE INSURANCE COMPANY OF NORTH AMERICA.

Pennsylvania State System of Higher Education

Signature and Title: _____ Date: _____

(This Copy Is To Be Returned To Life Insurance Company of North America)

---

**LIFE INSURANCE COMPANY OF NORTH AMERICA**
**PHILADELPHIA, PA 19192-2235**

We, Pennsylvania State System of Higher Education, whose main office address is Harrisburg, PA, hereby approve and accept the terms of Group Policy Number FLX-980054 issued by the LIFE INSURANCE COMPANY OF NORTH AMERICA to the TRUSTEE OF THE GROUP INSURANCE TRUST FOR EMPLOYERS IN THE SERVICES INDUSTRY.

This form is to be signed in duplicate. One part is to be retained by Pennsylvania State System of Higher Education; the other part is to be returned to the LIFE INSURANCE COMPANY OF NORTH AMERICA.

Pennsylvania State System of Higher Education

Signature and Title: _____ Date: _____

(This Copy Is To Be Retained By Pennsylvania State System of Higher Education)

EXHIBIT A

# EXHIBIT B