# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALBERT CELEC, et al.,                    )
                                         )
                    Plaintiffs,          )    Civil Action No. 1:15-cv-2
                                         )
v.                                       )    Judge Mark R. Hornak
                                         )
EDINBORO UNIVERSITY, et al.,             )
                                         )
                    Defendants.          )

## <u>OPINION</u>

**Mark R. Hornak, United States District Judge**

This civil action arises out of a dispute concerning a supplemental life insurance policy which the late Dr. Philip Ginnetti purchased while he was employed at Edinboro University in Erie County, Pennsylvania. The policy in question was issued by Life Insurance Company of North America ("LINA"), a subsidiary of Cigna Corporation ("Cigna"). Plaintiff Albert Celec was the domestic partner of Ginnetti during the time the policy was in effect. Following Ginnetti's death, Plaintiff sought benefits under Ginnetti's supplemental life insurance policy, but his requests were denied. Thereafter, Plaintiff commenced this lawsuit in the Erie County Court of Common Pleas, naming Edinboro University, Cigna, and LINA as Defendants. The case was removed to this Court on January 5, 2015 (*see* ECF No. 1).[1]

Presently pending before the Court are the Defendants' motions to dismiss the Complaint. For the reasons that follow, these motions will be granted.

---

[1] The jurisdictional bases for removal were 28 U.S.C. §§ 1331, 1343, 1367, 1441 and 1443. (See Notice of Removal ¶¶ 5-13.)

## I. **BACKGROUND**

Plaintiff is a 55 year-old male who resides in Boardman, Ohio. (Compl. ¶ 8, ECF No. 1-1.) From 1994 until Ginnetti's death in June 2012, Plaintiff and Ginnetti were domestic partners and lived together in a jointly-owned home in Boardman. (Id. ¶¶ 2, 7-8, 16.) In 1999, Ginnetti and Plaintiff executed a Shared Living Agreement ("SLA"). (Compl. Ex. E.) Under the terms of that agreement, Ginnetti and Plaintiff were required to maintain life insurance on one another, name each other as beneficiary on any life insurance policies taken out on themselves, put their property into a trust for the sole benefit of each other, and name one another as sole heir and beneficiary under their respective wills. (Compl. ¶¶ 2, 17; Compl. Ex. E.) After Ginnetti's death, Plaintiff became the executor and sole heir and beneficiary of his estate. (Compl. ¶8.)

Edinboro University (hereafter, "Edinboro" or the "University") is a public university and a member of the Pennsylvania State System of Higher Education ("PASSHE"). (Compl. ¶¶ 9, 12.) As an affiliate of PASSHE, Edinboro is bound by Executive Order 2003-10, which prohibits employment discrimination due to sexual orientation. (Compl. ¶13; Compl. Ex. B.) In 2007, PASSHE adopted a Same-Sex Domestic Partner policy, which effectively made Edinboro's Management Benefits Program ("MBP") available to qualified same-sex domestic partners of managerial employees. (Compl. ¶¶14, 20; Compl. Ex. C.) Edinboro has also adopted an EEO policy prohibiting discrimination in employment and participation in benefit programs due to sexual orientation or marital status. (Compl. ¶15; Compl. Ex. D.)

In 2010, Ginnetti left a secure job as Dean of Youngstown State University's Beeghley School of Education to accept a position as Provost and Vice President at Edinboro. (Compl. ¶¶ 1, 18.) Ginnetti's decision was driven largely by the fact that Edinboro prohibits employment discrimination due to sexual orientation and marital status, and because participation in

2

Edinboro's MBP would allow Ginnetti to provide healthcare and other benefits to Plaintiff. (Id. ¶¶ 1, 21.)

Shortly after Ginnetti was hired by Edinboro, he and Plaintiff applied for recognition of Plaintiff as Ginnetti's qualified domestic partner, so that the two could qualify for PASSHE's Same-Sex Domestic Partner Program. (Compl. ¶¶ 2, 23-26.) Based on the information provided by Ginnetti and Plaintiff, Edinboro recognized Plaintiff as Ginnetti's qualified domestic partner and thereafter provided the couple benefits under the MBP, including health care, until Ginnetti's death. (Id. ¶¶ 2, 24-26.) During the course of Ginnetti's employment at Edinboro, he and Plaintiff regularly attended campus events together and were well known as domestic partners. (Id. ¶27.) In July 2010, Ginnetti purchased a house in Edinboro so that he and Plaintiff would have a place close to campus to stay or entertain others, when needed. (Id. ¶22.)

Through its MBP, Edinboro provided Ginnetti $50,000 in life insurance from Prudential and a right to purchase supplemental life insurance coverage. (Compl. ¶¶ 3, 28.) Ginnetti ultimately purchased $100,000 in additional life insurance coverage from Cigna.[2] (Id. ¶¶ 3, 29) Ginnetti made it clear to Edinboro that Plaintiff was his intended beneficiary under both life insurance policies. (Id. ¶30.) Ginnetti expressly planned that the proceeds of the Cigna policy would be used to pay off the mortgage on the Edinboro house in the event that he predeceased Plaintiff, as that house would pass to Plaintiff under the terms of Ginnetti's will. (Id. ¶ 32.)

When Ginnetti was in the process of purchasing the two life insurance policies, he signed certain paperwork at the direction of an Edinboro human resources employee by the name of Linda Harrison. (Compl. ¶33.) In the process of completing the paperwork, Harrison neglected

---

[2] Although the policy in question was issued by LINA as the insurer, the Complaint refers to the policy as the "Cigna policy," and this Court will do the same. While Cigna denies that it was a party to the subject insurance policy, the Court need not resolve this dispute because it is immaterial for present purposes. For purposes of this memorandum opinion, the Court will accept Plaintiff's characterization of the subject policy as a "Cigna policy."

to fill in Plaintiff's name on the beneficiary designation line and further neglected to alert Ginnetti about the omission. (Id. ¶ 34.) The Prudential and Cigna policies both provided that, in the absence of a beneficiary designation, proceeds would be paid to a surviving spouse, if one existed. (Id. ¶ 35; Compl. Ex. A at p. 14.)

On June 29, 2012, Ginnetti died and, in accordance with his will, Plaintiff was appointed executor of his estate. (Compl. ¶¶ 36-37.) Shortly thereafter, Edinboro sent Plaintiff documentation which revealed that it had failed to list him as the beneficiary when it prepared the applications for the two life insurance policies. (Id. ¶ 38.) When confronted with this omission, Harrison apologized to Plaintiff and acknowledged her mistake. (Id. ¶ 39.)

On July 25, 2012, Sid Booker, Edinboro's Associate Vice President of Human Resources and Faculty Relations, wrote to Cigna and Prudential at Plaintiff's request in order "to verify and provide evidence of [the Celec-Ginnetti] partnership." (Id. ¶ 40.) Booker advised the insurance companies that:

> [w]hen Dr. Ginnetti … became eligible for health care coverage… he requested that his domestic partner, Albert S. Celec, be added as a covered dependent. Dr. Ginnetti did provide a PASSHE Same-Sex Domestic Partnership Certification and supporting evidence … Albert S. Celec was covered under the PASSHE Group Health Program as the qualified domestic partner of Phillip E. Ginnetti effective July 1, 2012 through the date of death, June 29, 2012.

(Compl. ¶ 40; Compl. Ex. G.) After sending the letters, Booker advised Plaintiff that, going forward, Edinboro intended to treat the matter as an issue that was strictly between Plaintiff and the insurance carriers. (Compl. ¶ 41.)

Plaintiff submitted claims to both Prudential and Cigna on August 3, 2012, requesting payment under each of the life insurance policies. (Compl. ¶ 42; Compl. Ex. H.) Prudential subsequently paid the $50,000 life insurance policy proceeds to Plaintiff after determining that Plaintiff was Ginnetti's rightful beneficiary. (Compl. ¶¶ 4, 43.)

4

Cigna, on the other hand, denied Plaintiff's claim. (Compl. ¶¶ 4, 44.) In a letter dated August 22, 2012, Cigna's representative advised that, pursuant to the applicable policy language, in cases where no beneficiary is named on the policy, death benefits are payable "to the first surviving class of the following living relatives: spouse; child or children; mother or father; brothers or sisters; or to the executor or administrators of the Insured's estate." (Compl. ¶ 44; Compl. Ex. I, p. 1.) The representative further advised that the claim was not payable to Plaintiff because Plaintiff "[did] not meet the definition of a Spouse and [was] not in any other class of living relatives." (Compl. ¶47; Compl. Ex. I at pp. 1-2.)

While Plaintiff's appeal of the claim denial was pending, Cigna sent several "Preferential Beneficiary" notices to Ginnetti's mother, Irene Ginnetti. (Compl. ¶¶ 48-49.) On October 16, 2012, Mrs. Ginnetti wrote to Cigna, stating that it was "[her] belief that this policy was intended for Albert S. Celec, Jr.," and she urged Cigna to "do the right thing for all people involved and pay this policy's proceeds" to Plaintiff. (Compl. Ex. J.) In the meantime, Edinboro President Julie Wollman had telephoned Cigna's offices and left a voicemail message indicating her view that Plaintiff was the rightful beneficiary to Ginnetti's life insurance policy. (Compl. ¶ 50.)

Despite these measures, Cigna denied Plaintiff's appeal, but it allowed Plaintiff to submit additional supporting information for its review within sixty days. (Compl. ¶52; Compl. Ex. K.) Plaintiff complied by submitting additional argument and evidence in support of his claim; this included the SLA, pursuant to which Ginnetti had agreed to name Plaintiff as the beneficiary on any life insurance policy he obtained. (Compl. ¶ 53; Compl. Ex. L and M.)

In January 2013, while Plaintiff's appeal was pending, Cigna paid the $100,000 policy proceeds to Ginnetti's mother, notwithstanding Mrs. Ginnetti's letter urging that the proceeds be

5

paid to Plaintiff. (Compl. ¶ 54.) In July 2012, Cigna formally denied Plaintiff's appeal, reasoning that:

(1) the SLA provision requiring Ginnetti to name Plaintiff as beneficiary on his life insurance policies was not binding on Cigna; and

(2) PASSHE's Same-Sex Domestic Partner program, which barred discrimination on the basis of sexual orientation, applied only to MBP health insurance, not MBP life insurance.

(Compl. ¶ 55; Compl. Ex. N.)

Based on these events, Plaintiff commenced the instant litigation, both in his individual capacity and as executor of Ginnetti's estate. At this procedural juncture, Plaintiff's Complaint asserts six (6) causes of action against the Defendants.[3] Count I of the Complaint asserts a claim against all three Defendants for a reformation of the Cigna policy that would identify Plaintiff as beneficiary. Counts II and IV assert claims against Cigna and LINA for breach of contract and bad faith, respectively. Counts V and VI assert claims against Edinboro for alleged violations of Plaintiff's equal protection rights under the U.S. and Pennsylvania Constitutions, respectively. Count VIII asserts a claim against Edinboro for negligence and/or negligent misrepresentation.

On January 8, 2015, Edinboro filed its motion to dismiss the Complaint and supporting brief (ECF Nos. 4 and 5) pursuant to Federal Rule of Civil Procedure 12(b)(6). On January 12, 2015, Cigna and LINA filed their joint motion to dismiss the Complaint and supporting brief pursuant to Rules 12(b)(6) and 12(b)(7) (ECF Nos. 8 and 9.) Plaintiff filed his briefs in opposition to these motions (ECF Nos. 13, 14), and the Defendants have filed their respective replies (ECF Nos. 15, 17.) On May 6, 2015, the Court entertained oral argument (*see* ECF No.

---

[3] The Complaint originally included eight (8) causes of action. However, Plaintiff's claim against Cigna for negligent misrepresentation (Count III) was previously dismissed with prejudice, and his claim against Edinboro for breach of contract (Count VII) was dismissed without prejudice. (*See* Text Order dated May 11, 2015, ECF No. 27.)

26). As a result of the foregoing, the material issues have been adequately joined and the pending motions are ripe for disposition.

## II. **STANDARD OF REVIEW**

Defendants move to dismiss the complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). In assessing the viability of a claim under Rule 12(b)(6), courts must "(1) identify[ ] the elements of the claim, (2) review[ ] the complaint to strike conclusory allegations, and then (3) look[ ] at the well-pleaded components of the complaint and evaluat[e] whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Although courts must accept the veracity of all well-pleaded facts, they need not credit legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). The alleged facts must be "sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (*quoting Iqbal*, 129 S. Ct. at 1950). Essentially, to withstand a motion to dismiss, a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014) (internal quotation marks and citations omitted). In adjudicating a motion to dismiss under Rule 12(b)(6), the court may consider only the Complaint, exhibits attached to the Complaint, matters of public record, and any undisputedly authentic documents upon which the Plaintiff's claims may be based. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993)).

Defendants Cigna and LINA also move for dismissal of the Complaint under Rule 12(b)(7) based on Plaintiff's alleged failure to join an indispensable party pursuant to Rule 19.

*See* Fed. R. Civ. P. 12(b)(7). For the purpose of ruling on motion to dismiss under Rule 12(b)(7), as with Rule 12(b)(6), the Court must accept any well-pleaded factual allegations as true. *See Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 F. App'x 803, 805 (3d Cir. 2003); *Wilson v. The Canada Life Assur. Co.,* No. 4:08–CV–1258, 2009 WL 532830, at \*2 (M.D. Pa. Mar. 3, 2009); *Clements v. Holiday Inns, Inc.*, 105 F.R.D. 467, 469 (E.D. Pa. 1984).

### III. DISCUSSION

#### A. CLAIMS AGAINST EDINBORO UNIVERSITY

##### *1. Reformation (Count I)*

Plaintiff's first cause of action is a claim for reformation of the Cigna policy. The Complaint alleges that this policy involved a contractual arrangement between Ginnetti and Cigna as to which Plaintiff was a third party beneficiary. (Compl. ¶¶ 57-59.) According to the Complaint, Harrison mistakenly failed to identify any beneficiary on the relevant form or alert Ginnetti to the omission, despite Ginnetti having made it clear that Plaintiff was his intended beneficiary on the policy. (Id. ¶¶ 60-63.) As a result, it is alleged, Ginnetti and Edinboro believed that proceeds on the policy would be paid to Plaintiff in the event of Ginnetti's death; Cigna, on the other hand, knew that Plaintiff was not a properly named beneficiary and would not be awarded benefits as a "spouse," yet it did nothing to correct Ginnetti's and Edinboro's mistaken belief that proceeds on the policy would be payable to Plaintiff. (Id. ¶¶ 64-65.) Plaintiff avers that, "[a]s a result of Cigna's unilateral mistake, which it failed to correct, Dr. Ginnetti and Celec are entitled to reformation so that Celec is named beneficiary on the policy." (Id. ¶ 66.)

Edinboro has moved for dismissal of Count I on several grounds. Edinboro first argues that, because it was not a party to any contract with Ginnetti or Plaintiff, it has no power or

8

ability to reform the contract. Edinboro next argues that, even if it *was* a party to the relevant contract, the Commonwealth Board of Claims would have exclusive jurisdiction over any claim against Edinboro arising from that contract. Alternatively, Edinboro argues that, even if the reformation claim could theoretically be litigated in this forum, Plaintiff's claim against the University would be barred by the doctrine of sovereign immunity.

The Court agrees that Edinboro is not a proper party defendant to the reformation claim. As noted, Count I of the Complaint alleges only the existence of a contract between Ginnetti and Cigna, as to which Plaintiff was the third party beneficiary. Nowhere in Count I is Edinboro's status as a contracting party alleged. In fact, according to the Complaint, Edinboro's only involvement in the supplemental life insurance policy was: (a) offering Ginnetti the opportunity to purchase supplemental life insurance coverage through Cigna and (b) assisting Ginnetti with the necessary paperwork. (Compl. ¶¶ 3, 28, 30-34.) These averments do not establish any plausible basis for concluding that Edinboro had contractual rights or obligations relative to the payment of benefits under the Cigna policy.

In his brief in opposition, Plaintiff argues that Edinboro is a proper party to Count I because it is defined as a subscribing "Employer" in the master agreement and because it offered the Cigna policy to its employees. Plaintiff correctly observes that "[g]enerally, in group insurance policies, the insurance carrier and the employer are the primary contracting parties and the rights of an insured employee are no greater than as provide by the terms of the policy." *Guardian Life Ins. Co. of Am. v. Zerance,* 479 A.2d 949, 952 (Pa. 1984). "Although in some respects a party to the insurance contract…, the insured employee is ordinarily considered only as a third party beneficiary." *Aetna Life Ins. Co.v. Messier,* 173 F. Supp. 90, 97 (M.D. Pa. 1959) (internal citations omitted). In this case, the master agreement was between PASSHE and LINA,

9

Cigna's wholly-owned subsidiary. (*See* Compl. Ex. A, ECF No. 1-1, at p. 29 of 56.) This master agreement acknowledges that Edinboro is one of PASSHE's "affiliates" (*see id.* at p. 53), and it defines the term "Employer" to include not only the subscriber (PASSHE), but also "any of its affiliates... covered under the Policy." (*See id.* at p. 52 of 56.) The master agreement also affords Edinboro, as "Employer," certain contractual rights, such as the right to terminate group coverage under certain conditions. (*See* Compl. Ex. A, ECF No. 1-1, at p. 46 of 56 (providing that the "Employer or the Insurance Company may cancel the Policy as of any Premium Due Date by giving 31 days advance written notice...").) *See also Zerance*, 479 A.2d at 952 ("Where it is consistent with the provisions of the policy, and notice of the intended cancellation is given to the insured, the employer may cancel the policy and thereby terminate the coverage of the individual employees.") (footnote and citations omitted).

Nevertheless, even if Edinboro is viewed as a party to the underlying group policy, the Court is still not persuaded that the University is properly named as a Defendant in the reformation claim at Count I. Reformation of a contract is an equitable remedy which "presupposes that a valid contract between the parties was created but, for some reason, was not properly reflected in the instrument that memorializes the agreement." *Erie Telecomm., Inc. v. City of Erie*, 853 F.2d 1084, 1091 (3d Cir.1988). Here, Plaintiff seeks an order from this Court identifying him as the rightful beneficiary under the Cigna policy with a corresponding contractual right to recover the $100,000 in supplemental benefits. Edinboro has no legal interest that is affected, much less adversely affected, by Plaintiff's requested relief. Under the terms of the subject insurance policy, as with all insurance policies, it is the insurer that is responsible for any payment of insurance benefits. Edinboro had no contractual obligation to pay insurance benefits under the policy, nor did it have any contractual right to name Ginnetti's

10

beneficiary; on the contrary, that right belonged exclusively to Ginnetti, as the insured party. (*See* Compl. Ex. A at p. 44 of 56 ("Death Benefits will be paid to *the Insured's named beneficiary*, if any, on file at the time of payment.") (emphasis added).) *See also Messier,* 173 F. Supp. at 97 (noting that, under a group life insurance policy, "[t]he employees, as the insured, have the sole right to designate the beneficiary..."). To the extent Edinboro had any involvement at all in the naming of a beneficiary, it consisted of completing forms and otherwise acting as Ginnetti's "agent." (*See* Compl. Ex. A at p. 50 ("The Employer and Plan Administrator are agents of the Employer for transactions relating to insurance under the Policy. The Insurance Company is not liable for any of their acts or omissions."); *id.* at 52 ("The Employer is acting as an agent of the Insured for transactions relating to this insurance. The actions of the Employer shall not be considered the actions of the Insurance Company.").) After Ginnetti's death, Edinboro made contact with Cigna on two occasions to advocate on Plaintiff's behalf; however, no other actions on the part of Edinboro are alleged in the Complaint. Accordingly, it is plain from Plaintiff's own pleading and the appended exhibits that Edinboro has no interest relative to the reformation claim that is adverse to Plaintiff's interests, nor does Edinboro have any contractual rights or obligations relative to the naming of beneficiaries or the payment of benefits under the policy. Because Edinboro is not a properly named Defendant relative to Count I, the reformation claim will be dismissed as against the University.

Even if Edinboro were a properly named Defendant, however, the Court would find that the reformation claim against the University must be dismissed because such a claim is properly asserted, if at all, only in the Commonwealth Board of Claims.[4] "Pennsylvania Courts have long

---

[4] The Board of Claims was created by the Pennsylvania state legislature in 1937 to arbitrate claims arising from contracts with the Commonwealth. *See Employers Ins. of Wausau v. Commonwealth*, 865 A.2d 825, 832 (Pa. 2005) (citing *Emergency Med. Servs. Council of Nw. PA, Inc. v. Dep't of Health*, 451 A.2d 206, 209 (Pa. 1982)). The

recognized the importance of the Board's jurisdiction in abrogating sovereign immunity so as to provide a forum for those who contract with the Commonwealth." *Telwell v. Public Sch. Employees' Ret. Sys.,* 88 A.3d 1079, 1085 (Pa. Commw. Ct. 2014). The Commonwealth Court recently explained the role of the Board of Claims *vis-à-vis* Pennsylvania's sovereign immunity doctrine in *Armenti v. PA State Sys. of Higher Educ.,* 100 A.3d 772 (Pa. Comm. Ct. 2014):

> Our appellate courts have consistently recognized that the Commonwealth is protected from civil suit by sovereign immunity except where the General Assembly has specifically waived that immunity. The limited exceptions to sovereign immunity must be narrowly and strictly construed because the General Assembly intended to exempt the Commonwealth from immunity only in specific situations.
>
> 1 Pa.C.S. § 2310 clarifies that the General Assembly has waived sovereign immunity "only in such manner and in such courts and in such cases" as set forth in Titles 42 and 62 of the Pennsylvania Consolidated Statutes. The limited waivers of sovereign immunity in Title 42 relate solely to liability for negligence. Under Title 62, the General Assembly has waived sovereign immunity for certain contract claims against the Commonwealth and its agencies, but that waiver applies only to claims "brought in accordance with" Sections 1711.1 (relating to protests of solicitations or awards) and 1712.1 (relating to contract controversies) and Subchapter C (relating to Board of Claims) and even then "only to the extent set forth in this chapter." 62 Pa.C.S. § 1702.
>
> As our Supreme Court explained in *Scientific Games International, Inc. v. Department of Revenue*, 620 Pa. 175, 66 A.3d 740 (2013), the Procurement Code [62 Pa. C.S.A. §§101 *et seq.*] is "designedly structured to accord immunity, subject only to specific and limited exceptions." *Id.* at 753. "[T]he exception to sovereign immunity pertaining to Board–of–Claims jurisdiction defines the extent of the Commonwealth's statutory exception from sovereign immunity for claims arising from contract." *Id.* at 755 (emphasis added).

100 A.3d at 777 (second alteration in the original).

There is no dispute that Edinboro, as an affiliate member of PASSHE, is entitled to general sovereign immunity protection. *See Armenti,* 100 A.3d at 777 (noting that PASSHE is a

---

Board's jurisdiction was originally set forth in the Board of Claims' Act at 72 P.S. §§ 4641-1 to 4651-10; however, since June 2003 those provisions have been relocated to the Procurement Code, 62 Pa. C.S.A. §§ 1721-1726. *See generally Telwell v. Public Sch. Employees' Ret. Sys.*, 88 A.3d 1079, 1083-84 (Pa. Commw. Ct. 2014).

Commonwealth instrumentality "cloaked with sovereign immunity") (citation omitted); *Crockett v. Edinboro Univ.,* 811 A.2d 1094, 1095-96 (Pa. Commw. Ct. 2002) (holding that Edinboro was entitled to sovereign immunity from plaintiff's claims alleging violations of state and federal unfair trade practices and debt collections laws). To the extent the Commonwealth has waived its sovereign immunity relative to adverse claims for equitable reformation of its contracts, jurisdiction over such claims lies exclusively with the Board of Claims. Accordingly, if Plaintiff wishes to pursue his reformation claim against the Commonwealth, he must do so, if at all, in the Board of Claims.

The Pennsylvania Supreme Court's decision in *Keenheel v. Commonwealth,* 565 A.2d 1147 (Pa. 1989), on which Plaintiff relies, is not to the contrary. In *Keenheel* the plaintiff was a former employee of the Pennsylvania Securities Commission who sought rescission of a settlement agreement with his former employer so that he could reinstate his prior complaints of race-based employment discrimination with the EEOC and the Pennsylvania Human Relations Commission. The Pennsylvania Supreme Court held that the plaintiff's claim for equitable rescission of the settlement agreement did not lie within the exclusive jurisdiction of the Board of Claims. 565 A.2d at 1150. Citing *Shovel Transfer and Storage, Inc. v. Simpson,* 565 A.2d 1153 (Pa. 1989), the court noted that "the determining factor as to whether the jurisdiction of the Board of Claims is invoked depends on whether the claim asserted against the Commonwealth is founded in contract." 565 A.2d at 1148. The court observed in *Keenheel* that, even though the plaintiff's prior settlement agreement with the Commonwealth was the subject of the litigation, it was not the basis for the plaintiff's claim against the Commonwealth for equitable rescission of the agreement. "Indeed," the court noted, "the instant contract pose[d] an impediment to the claim [the plaintiff sought] to assert against an agency of the commonwealth." *Id.* The court

13

found this distinction "critical" to its inquiry in that it was "not … concerned with a contract claim being asserted against the Commonwealth. To the contrary, [the plaintiff ...] brought the instant action in an effort to avoid any obligation rising from the challenged contract." *Id.* Thus, because the plaintiff's lawsuit was "not an action in which [the plaintiff was] asserting a claim against the Commonwealth under the contract at issue," *id.,* the claim could be properly adjudicated in the Commonwealth Court.

This court finds that *Keenheel*, rather than supporting Plaintiff's argument in this case, actually undermines it. In this case, unlike in *Keenheel,* the Plaintiff *is* asserting a claim founded in contract: *to wit,* he is claiming a right to insurance benefits that allegedly arise, under equitable principles, from the contract at issue in Count I. Even though Plaintiff is not asking that the Commonwealth itself pay the insurance benefits at issue, he has named Edinboro as an adverse party in Count I and seeks benefits under a contract to which Edinboro allegedly is a party. The Court therefore finds that, to the extent Edinboro is a properly named Defendant in Count I, *Keenheel* supports the conclusion that jurisdiction lies in the Board of Claims.

Plaintiff also argues that jurisdiction is proper in this Court because he is seeking only declaratory relief naming himself as beneficiary on the subject policy, and such relief is unavailable in the Board of Claims. Citing *Pennsylvania Fed'n of Dog Clubs v. Commonwealth*, 105 A.3d 51, 59 (Pa. Commw. Ct. 2014), Plaintiff further argues that declaratory relief is not barred by the doctrine of sovereign immunity.

These arguments are not well taken because the claim in Count I cannot be accurately construed as merely a claim for declaratory relief. Nowhere in Count I does Plaintiff seek judgment under Pennsylvania's Declaratory Judgment Act, 42 Pa. C.S.A. §§7531-7541 or its federal counterpart, 28 U.S.C. §§ 2201-2202. Instead, he specifically asks for a reformation of

14

Ginnetti's insurance policy in order to identify himself as the intended beneficiary. Under Pennsylvania law, there is a significant distinction between equitable claims seeking reformation of a contract and claims for declaratory relief which seek merely a determination of the parties' *existing* rights and status under a contract:

> It is well settled… that courts are not authorized to reform instruments within the framework of a declaratory judgment action. …
>
> To *reform* would not be declaring a right, status or other legal relation. It is only *after* reformation that rights of the parties could be declared in respect to the reformed contract. The [Declaratory Judgments] Act contemplates a declaration of rights, status, or other legal relation of any person interested under an *existing instrument,* statute, or ordinance, contract, or franchise. Nowhere are the courts given the authority to *reform* an instrument in a declaratory judgment proceeding. Such a proceeding is limited to the adjudication of rights under *existing* documents or legislation as then written.

*New London Oil Co., Inc. v. Ziegler,* 485 A.2d 1131, 1133 (Pa. Super. Ct. 1984) (internal citation omitted) (emphasis in the original) (citing *Baskind v. Nat'l Surety Corp.,* 101 A.2d 645, 646 (Pa. 1954)).

Even if Count I is construed as seeking declaratory relief, however, it does not necessarily follow that this Court has jurisdiction over Count I or that jurisdiction in the Board of Claims is lacking. The Pennsylvania Supreme Court "ha[s] construed the language of the enabling statute to mean that the Board of Claims is empowered to entertain all contractual claims against the Commonwealth *irrespective of the type of relief sought or the fact that the Board of Claims may not have the power to grant the relief requested.*" *Shovel Transfer and Storage, Inc. v. Simpson,* 565 A.2d 1153, 1155 (Pa. 1989) (emphasis added). Thus, Plaintiff's reformation claim against Edinboro must be asserted, if at all, in the Board of Claims.

If the reformation claim cannot be asserted in the Board of Claims, then it is barred by Pennsylvania's sovereign immunity doctrine and cannot be asserted here. As the

15

Commonwealth Court recognized in *Pennsylvania Fed'n of Dog Clubs,* "(s)overeign immunity does not bar a declaratory judgment action or injunction seeking to prohibit state parties from acting[;] it does [however] apply to an action seeking to compel state parties to act or seeking to obtain money damages or recover property from the Commonwealth." 101 A.2d at 59 (third alteration in the original). Plaintiff's claim at Count I seeks affirmative action in the form of a reformation of the Cigna insurance policy. Accordingly, to the extent that Plaintiff has properly named Edinboro as an adverse party to Count I and seeks an order compelling the University to affirmatively reform Ginnetti's supplemental life insurance policy, the doctrine of sovereign immunity bars Plaintiff from litigating his claim against Edinboro in any venue outside of the Board of Claims.

For the foregoing reasons, the Court concludes that the reformation claim against Edinboro must be dismissed. Out of an abundance of caution, however, the Court will enter that dismissal without prejudice so that Plaintiff can pursue relief, if he desires, in the Board of Claims.[5]

### 2. *Equal Protection Claims (Counts V and VI)*

In Counts V and VI of the Complaint Plaintiff alleges, respectively, Edinboro's violation of his federal and state rights to equal protection under the laws. *See* U.S. Const. amend. XIV, §1 (providing that no state shall "deny to any person within its jurisdiction the equal protection of the laws"); Pa. Const. art. 1, §26 ("Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right."). The Fourteenth Amendment's Equal Protection

---

[5] Edinboro observes that, under the provisions of the Procurement Code, such relief may be barred for lack of timeliness. *See* 62 Pa. C.S.A. §1712.1(b). Whether or not that is true, any determination in that regard must be made in the first instance by the Board of Claims.

16

Clause "is essentially a direction that all persons similarly situated should be treated alike." *Shuman v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005) (citation omitted). In order to bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, a plaintiff must prove the existence of purposeful discrimination." *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009) (citing *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990)).

The equal protection provisions of the Pennsylvania Constitution are analyzed under the same standards used by the United States Supreme Court when reviewing equal protections claims under the Fourteenth Amendment to the United States Constitution. *See Doe v. Miller*, 886 A.2d 310 (Pa. Commw. Ct. 2005), *affirmed*, 901 A.2d 495 (Pa. 2006); *Muscarella v. Commonwealth,* 87 A.3d 966, 972 (Pa. Commw. Ct. 2014). However, no private cause of action exists under the Pennsylvania Constitution for money damages. *See Jones v. City of Phila.,* 890 A.2d 1188, 1216 (Pa. Commw. Ct. 2006).

Here, Plaintiff avers that Edinboro violated his rights by securing group term life insurance for managerial employees which "did not provide equal coverage to qualified same sex domestic partner spouses and heterosexual spouses" (Compl. ¶111), and, instead, provided "inferior benefits to gay and lesbian managerial employees and their qualified same-sex domestic partners." (Id. ¶113.) According to Plaintiff, this conduct violated Edinboro's own policies (Compl. ¶¶ 12-15),[6] as well as Plaintiff's right to equal protection under the laws.

---

[6] To the extent Plaintiff complains that Edinboro's conduct violated the University's own internal policies (*see* Pl.'s Br. Opp. Mot. Dismiss at 9 of 17, ECF No. 13 (citing Compl. ¶¶ 12-15)), this averment does not state a viable equal protection violation. *See U.S. v. Haswood*, 350 F.3d 1024, 1029 (9th Cir.2003) (an F.B.I. agent's failure to follow governmental policy on recording interviews does not necessarily create a constitutional violation); *U.S. v. Goodwin*, 57 F.3d 815, 818 (9th Cir.1995) (an assistant U.S. attorney's failure to comply with internal department policy on supplying "Advice of Rights" form to investigatory subjects did not establish a constitutional deprivation); *McGee v. Schleifer,* No. CV 08–1769-PHX–DGC (DKD), 2010 WL 1416028, at * 12 (D. Ariz. Apr. 8, 2010)

Although the Complaint does not specifically invoke 42 U.S.C. §1983, both Edinboro and Plaintiff agree that §1983 is the vehicle through which a plaintiff can assert the violation of a federal right.[7] Edinboro points out that, for purposes of §1983, a state, including its agencies, is not considered a "person" subject to liability. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under [42 U.S.C.] § 1983."). Accordingly, Edinboro properly observes that no viable §1983 claim can be stated against the University itself based on the alleged conduct set forth in Count V.

Plaintiff acknowledges that he cannot successfully state a §1983 claim against the University itself, but he nevertheless seeks leave to amend his pleading so that he can name an appropriate official as the Defendant in Count V. As the Supreme Court observed in *Will,* "a state official in his or her official capacity, when sued for injunctive relief, would be a person under §1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham,* 473 U.S. at 167, n.14 and *Ex parte Young,* 209 U.S. 123, 1590-60 (1908)). According to Plaintiff, it is his intention to

---

(municipal police officers' failure to comply with departmental policy on use of force did not establish a constitutional deprivation).

[7] Section 1983 provides a private right of action as against:

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws …

42 U.S.C. §1983. In order to state a claim under Section 1983, a plaintiff must allege the violation of a the Constitution or federal law by a person acting under color of state law. *Riley v. Corbett,* No. 15–1649, --- F. App'x ---, 2015 WL 4548132, at *1 (3d Cir. July 29, 2015).

amend Count V by seeking "injunctive and declaratory relief" against an appropriate officer of Edinboro University.[8] (*See* Pl.'s Br. Opp. Mot. Dismiss at p. 9 of 17, ECF No. 13.)

Rule 15 of the Federal Rules of Civil Procedure requires that leave to amend be "freely give[n] … when "justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, courts may deny leave to amend when the proposed amendment would be futile – as where, e.g., the amended complaint would not survive a motion to dismiss for failure to state a claim. *See Budhun v. Reading Hosp. and Med. Ctr.,* 765 F.3d 245, 259 (3d Cir. 2014). Here, Plaintiff's proposed amendment to Count V would be futile inasmuch as it fails to state either a plausible equal protection violation or a prospective or ongoing violation that could be redressed by way of declaratory or injunctive relief under §1983.

The gravamen of Plaintiff's equal protection claim, as noted, is that Edinboro procured a supplemental life insurance policy for its management level employees which, by its terms, allegedly treated same-sex domestic partners less favorably than heterosexual married couples. To support his equal protection claim, Plaintiff cites numerous cases addressing equal protection

---

[8] Although Plaintiff forswears any intention to assert a claim for money damages against the appropriate university official, no such claim would be viable in any event. For the reasons stated *infra,* the Court finds that no plausible equal protection violation has been alleged in Counts V and VI. Even if such a claim had been alleged, the Court would find that the federal equal protection right at issue in Count V was not "clearly established" at any time relevant to this civil action. *See Spady v. Bethlehem Area Sch. Dist.,* --- F.3d ---, 2015 WL 5103553, at *3-4 and n.4 (3d Cir. Sept. 1, 2015) (discussing general principles of qualified immunity defense). The specific right which Plaintiff claims was violated is the right of public employees and their qualified same-sex domestic partners to have the latter individuals placed on the same footing as heterosexual spouses in the hierarchy of default beneficiaries who may recover benefits under employer-sponsored life insurance policies in cases where human error prevents the qualified domestic partner from being properly identified as the employee's intended beneficiary. *See Spady,* 2015 WL 5103553, at *4 (courts are required to frame the alleged right at issue in light of the case's "specific context," not as a broad general proposition) (internal quotation marks and citation omitted). This Court is not aware of any decision from the United States Supreme Court – or a federal appellate court for that matter – which "clearly established" the right in question (or even arguably did so) as of the date of Edinboro's alleged misconduct. *See Spady, supra,* at *4 ("In order for a right to be clearly established there must be applicable precedent from the Supreme Court..."). Consequently, if Plaintiff were to amend Count V so as to assert a claim for money damages against the responsible university official, that official would be protected by qualified immunity. In addition, money damages are unavailable as a matter of law relative to Count VI. *See Jones v. City of Phila.,* 890 A.2d 1188, 1216 (Pa. Commw. Ct. 2006).

19

claims by same sex couples. *See, e.g., Diaz v. Brewer*, 656 F.3d 1008, 1010 (9th Cir. 2011); *Bassett v. Snyder*, 951 F. Supp. 2d 939 (E.D. Mich. 2013); *Lewis v. Harris*, 908 A.2d 196, 220-21 (N.J. 2006); *Alaska Civil Liberties Union v. State,* 122 P.3d 781, 788 (Alaska 2005).

The cases cited by Plaintiff are materially distinguishable from this case, however, and consequently they do not support the conclusion that Plaintiff has alleged a plausible equal protection claim here. *Lewis* involved a challenge to New Jersey laws restricting civil marriage to the union of a man and a woman. After detailing the many ways in which committed same-sex couples were economically and legally disadvantaged as compared to heterosexual married couples, *id.* at 215-17, the New Jersey Supreme Court found that the state's failure to provide same-sex couples and their children the same benefits and protections that were available to similar heterosexual households violated the state's constitutional equal protection guarantee. *Id.* at 220-21. Although, at all times relevant to this lawsuit, Pennsylvania had a similar ban on same-sex marriage, Plaintiff does not challenge that now-defunct law as part of this civil action, nor would Edinboro be a proper party to such a claim in any event.

*Diaz, Bassett*, and *Alaska Civil Liberties* also fail to support the existence of a plausible equal protection violation in this case. Each of these cases involved challenges by public employees and their same-sex domestic partners to state laws that essentially restricted the availability of public employment-related benefits to married couples in states where marriage was also defined as a union between a man and a woman only. Because eligibility for the benefits there in question was defined in terms of marital status, and because marital status was legally unavailable to same-sex couples, the employees who filed suit in *Diaz, Bassett*, and *Alaska Civil Liberties* were completely shut out of any opportunity to provide important benefits to their same-sex partners. *See Diaz,* 656 F.3d at 1014 (court noting that "different-sex couples

20

wishing to retain their current family health benefits could alter their status – marry – to do so. The Arizona Constitution, however, prohibits same-sex couples form doing so."); *Bassett,* 951 F. Supp. 2d at 963 and 965 (noting that "[s]everal courts have found that statutes restricting benefits on the basis of marriage intentionally classify on the basis of sexual orientation where gays and lesbians cannot legally marry" and concluding that Michigan's Public Act 297 similarly contains a discriminatory classification on the basis of sexual orientation) (citing authority); *Alaska Civil Liberties Union,* 122 P.3d at 788 ("Unmarried public employees in opposite-sex domestic relationships have the opportunity to obtain these benefits, because employees are not prevented by law from marrying their opposite-sex domestic partners. [ ] In comparison, public employees in committed same-sex relationships are absolutely denied any opportunity to obtain these benefits, because these employees are barred by law from marrying their same-sex partners in Alaska or having any marriage performed elsewhere recognized in Alaska. Same-sex unmarried couples therefore have no way of obtaining these benefits, whereas opposite-sex unmarried couples may become eligible for them by marrying.") (internal footnote omitted).

In those circumstances, the courts in *Diaz, Bassett,* and *Alaska Civil Liberties Union* found that the laws in question were facially discriminatory and could not pass constitutional muster because they did not advance a sufficiently important governmental interest. *See Diaz,* 656 F. 3d at 1014-15 (court's order enjoining enforcement of Arizona's challenged laws was "consistent with long standing equal protection jurisprudence holding that some objectives, such as a bare ... desire to harm a politically unpopular group, are not legitimate state interests") (internal quotation marks and citations omitted) (ellipsis in the original); *Bassett,* 951 F. Supp. 2d at 969 ("[I]t is hard to argue with a straight face that the primary purpose – indeed, perhaps the sole purpose – of the statute is other than to deny health benefits to the same-sex partners of

public employees. But that can never be a legitimate governmental purpose.") (internal quotation marks and citation omitted); *Alaska Civil Liberties Union*, 122 P.3d at 788-90 (concluding that the challenged benefits programs were facially discriminatory and did not pass even minimum scrutiny).

Unlike the employees who filed suit in *Diaz, Bassett*, and *Alaska Civil Liberties*, Ginnetti was not absolutely precluded from providing benefits to Plaintiff by virtue of any rule or policy established by Edinboro. On the contrary, notwithstanding the fact that Pennsylvania -- like Arizona, Michigan, and Alaska – then refused to recognize same-sex marriage at the times relevant to this lawsuit, Edinboro actually sought to make health insurance and other benefits available to its gay and lesbian employees and their qualified domestic partners. In fact, Plaintiff acknowledges as much, since he avers that Ginnetti sought employment at Edinboro for that very reason.

Plaintiff nevertheless appears to be arguing that Edinboro violated his equal protection rights by offering Ginnetti a supplemental life insurance policy that failed to place qualified same-sex domestic partners on the same footing as heterosexual spouses in the hierarchy of default beneficiaries who could recover benefits under the policy in the event that the insured (through his agent) accidentally failed to designate the qualified domestic partner as the intended beneficiary. (*See* Pl.'s Br. Opp. at 12 (Qualified domestic partner spouses, like heterosexual married spouses, deserve protection from the human error that might result – and which did result here – in a spouse not being formally named as beneficiary.").) The Court is not persuaded that this theory states a plausible violation of equal protection rights. It is plain from Plaintiff's own allegations that Edinboro provided Ginnetti the opportunity to purchase supplemental life insurance through Cigna if Ginnetti so chose, and there were no restrictions

22

whatsoever imposed by Edinboro that would have precluded Ginnetti from naming Plaintiff as the beneficiary of the policy. The fact that human error may have occurred in the application process does not translate into a violation of Plaintiff's equal protection rights. Plaintiff cites no case in which a court has found a plausible equal protection claim based on facts similar to those alleged here, and this Court has found none.

As to the theory that Edinboro failed to buy only a policy that put spouses and domestic partners on equal "default" footing, Plaintiff's big problem is that he has failed to allege any ongoing or prospective constitutional violation that could be redressed by way of declaratory or injunctive relief. The alleged equal protection violation set forth in Counts V and VI is premised on the fact that, under the terms of the subject policy, in the absence of a specifically designated beneficiary, an insured's heterosexual "spouse" would be the presumed beneficiary of the life insurance proceeds, whereas an insured's same sex domestic partner would not be a presumed beneficiary. As of June 2012, when Ginnetti died, Pennsylvania did not recognize the validity of same-sex marriages. But the legal landscape changed as of May 20, 2014, when a federal court in Pennsylvania struck down the Commonwealth's domestic relations statutes that had defined marriage as between "one man and one woman" and had refused to recognize same-sex marriages otherwise validly performed in other jurisdictions. *See Whitewood v. Wolf,* 992 F. Supp. 2d 410, 423-24 (M.D. Pa. 2014) (holding that plaintiffs had a fundamental constitutional right to marry and striking down former 23 Pa.C.SA. §§1102 and 1704 as unconstitutional). With the Supreme Court's ruling in *Obergefell v. Hodges,* --- U.S. ---, 135 S. Ct. 2584 (2015), the right of same-sex couples to marry can no longer be lawfully denied in this Commonwealth, or in any other state for that matter. Moreover, since the policy defines "spouse" to be "[t]he current lawful Spouse of an Employee under age 70" (Compl. Ex. A at p. 52 of 56, ECF No.

1-1), same-sex married couples will henceforth be treated no differently than opposite-sex married couples under the sort of policy language at issue in this case.

Federal case law is plain that a §1983 plaintiff may obtain declaratory and/or prospective injunctive relief only where there is an on-going constitutional violation or imminent threat of constitutional harm. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105-11 (1983) (plaintiff who alleged past deprivation of constitutional rights by government officials did not have standing to seek declaratory relief with regard to future violations unless he demonstrates "a real and immediate threat" of similar future constitutional violations); *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 628 (3d Cir.2013) (explaining that a declaratory judgment is "prospective in nature"); *Thomas v. Jones,* 428 F. App'x 122, 124 (3d Cir. May 19, 2011) (To obtain injunctive or declaratory relief under §1983, the plaintiff must show that "he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical... Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief[.]") (internal quotation marks and citations omitted); *San Diego County Gun Rights Comm. v. Reno,* 98 F.3d 1121, 1126 (9th Cir. 1996) (because plaintiffs sought declaratory and injunctive relief only, they were required to "show a very specific possibility of future harm; it is insufficient for them to demonstrate only a past injury"). Because no ongoing constitutional violation has been, or now can be, alleged here, any amendment of the Complaint to assert such a claim for prospective injunctive or declaratory relief would be futile.[9] For substantially the same reasons, the Court finds that Plaintiff cannot

---

[9] To the extent Plaintiff would assert that the ongoing denial of his life insurance claim is an "ongoing violation" redressible by way of declaratory relief, the argument lacks merit. Under this hypothetical theory, Plaintiff's

state a viable claim for injunctive or declaratory relief under the Pennsylvania Constitution. Accordingly, Counts V and VI of the Complaint will be dismissed with prejudice.

### 3. Negligence/Negligent Misrepresentation (Count VIII)

In Count VIII of the Complaint, Plaintiff asserts claims against Edinboro for negligence and negligent misrepresentation. These claims are premised on the allegation that Edinboro, through Hamilton, failed to properly complete the insurance application forms and then inaccurately represented to Ginnetti that the forms had been properly completed and that they designated Plaintiff as beneficiary. (Compl. ¶138.) According to the Complaint, Edinboro knew or should have known that Plaintiff was not specifically named as beneficiary on the Cigna forms and that, as a result, Cigna would not recognize Plaintiff as the beneficiary under the policy. (Id. ¶139.) Nevertheless, Harrison failed to notice her omission or alert Ginnetti to it. (Id. ¶34.) Not knowing of this omission, Ginnetti relied to his detriment on Hamilton's misrepresentations and paid the monthly premiums on the policy until his death. (Id. ¶¶ 140-41.) Plaintiff alleges that, through its misrepresentations and omissions, Edinboro thwarted Ginnetti's intentions and deprived plaintiff of the insurance proceeds. (Id. ¶142.)

Edinboro contends that it is entitled to sovereign immunity on the claims in Count VIII. Under Pennsylvania's Sovereign Immunity Act, 42 Pa. C.S.A. §§ 8521 *et seq.*,

> sovereign immunity is only waived for damages arising out of a negligent act where the common law or a statute would permit recovery if the injury were caused by a person not protected by sovereign immunity. However, in order for the Commonwealth to be found liable, a party must also establish that the cause of action falls under one of nine specifically enumerated exceptions to immunity. Because of the clear intent to insulate the government from liability, the exceptions to sovereign immunity are to be strictly construed.

requested "declaratory relief" would constitute nothing more than a back-door method of attaining money damages for a past harm. For the reasons stated, *supra,* in footnote 8, such a claim is not viable here.

*Samuels v. Walsh,* No. 318 C.D. 2014, 2014 WL 10298879, at \*2 (Pa. Commw. Ct. Nov. 17, 2014) (citing *Mullin v. Dep't of Transp.*, 870 A.2d 773, 779 (Pa. 2005)) (citations omitted); *see* Pa. Const. art. 1, §11; 42 Pa. C.S.A. §§ 8521-22.

Here, Plaintiff argues that his claim falls within an exception to sovereign immunity applicable to claims premised on the negligent "[c]are, custody or control of personal property." 42 Pa. C.S.A. §8522(b)(3). This exception provides, in relevant part, that the defense of sovereign immunity is unavailable as to "claims for damages caused by: ... [t]he care, custody or control of personal property in the possession or control of Commonwealth parties, including Commonwealth-owned personal property and property of persons held by a Commonwealth agency..." *Id.* In numerous decisions, Pennsylvania courts have held that this exception to sovereign immunity applies only in situations where the property *itself* is responsible in some manner for the plaintiff's injury. *See, e.g., Pa. State Police v. Klimek*, 839 A.2d 1173, 1175 (Pa. Commw. Ct. 2003); *Bufford v. Pa. Dep't of Transp.*, 670 A.2d 751, 753 (Pa. Commw. Ct. 1996); *Sugalski v. Commonwealth*, 569 A.2d 1017, 1019 (Pa. Commw. Ct. 1990); *Serrano v. Pa. State Police,* 568 A.2d 1006 (Pa. Commw. Ct. 1990); *Nicholson v. M & S Detective Agency, Inc.*, 503 A.2d 1106, 1108 (Pa. Commw. Ct. 1986); *Urella v. Pa. State Troopers Ass'n,* 628 F. Supp. 2d 600, 606 (E.D. Pa. 2008); *Larsen v. State Employees' Retirement Sys.,* 553 F. Supp. 2d 403, 421 (M.D. Pa. 2008). *See also Pyeritz v. Commonwealth,* 32 A.3d 687, 696 (Pa. 2011) ("It is well established that the personal property exception only applies where the property itself causes the injury.") (Eakin, J., concurring) (citing authority).[10]

---

[10] In *Pyeritz,* the estate of a deceased hunter asserted a claim against the Pennsylvania State Police for negligent spoliation of evidence based on PSP's destruction of a tree stand safety harness which the hunter's estate wanted preserved for later use in connection with a products liability lawsuit. The Pennsylvania Supreme Court held that no cause of action for negligent spoliation of evidence exists under Pennsylvania law. 32 A.3d at 695. In light of its holding, the majority found it "unnecessary to determine... whether the personal property exception to state

Here, Plaintiff contends that the Cigna life insurance policy was Ginnetti's "property" and that its value was diminished by Edinboro's negligence. (*See* Pl.'s Br. Opp. at P. 15 (citing *In re Estate of Sauers,* 32 A.3d 1241, 1249 (Pa. 2011), for the proposition that life insurance policies are recognized in Pennsylvania as personal property of the decedent).) Notably, however, there is no allegation that the Cigna policy *itself* caused Plaintiff's harm; rather, the source of Plaintiff's injury was the allegedly negligent conduct of Harrison.

To circumvent this problem, Plaintiff offers a different interpretation of the personal property exception to sovereign immunity. He cites *Williams v. Stickman,* 917 A.2d 915 (Pa. Commw. Ct. 2007) and *Pelzer v. Pry,* No. 50 C.D.2012, 2013 WL 3970388, at *5 (Pa. Commw. Ct. May 15, 2013), for the proposition that sovereign immunity is waived where the plaintiff's negligence claim is premised on harm to his own personal property that occurs while in the care and control of the Commonwealth. In *Williams,* the Pennsylvania Commonwealth Court held that, pursuant to §8522(b)(3), sovereign immunity would not bar an inmate's claim that prison employees had negligently caused damage to his television set while the television set was in their possession. The court in *Williams* acknowledged its previous ruling in *Serrano, supra,* that §8522(b)(3) is inapplicable where the property itself is not responsible in some manner for the plaintiff's injury; however, the court distinguished *Serrano* on the grounds that *Serrano* had involved an injury that was "separate and distinct from the property," whereas the alleged injury at issue in *Williams* was "the loss of the property itself." 917 A.2d at 918 n.2. Thus, a fair reading of *Williams* suggests that the personal property exception to sovereign immunity applies to damages claims premised on the allegation that the plaintiff's property was damaged, lost or

---

sovereign immunity, 42 Pa. C.S. §8522(b)(3), applies only if the property in question causes the plaintiff's injuries, or whether it suffices that the plaintiff's injuries are caused by the Commonwealth's care, custody, or control of the property." *Id.* at 695 n.7.

destroyed as the result of the Commonwealth's negligent care of the property while it was in the Commonwealth's possession or control. *See Pelzer,* 2013 WL3970388, at \*5 n.6 (interpreting *Williams* as holding that, "where an inmate sets forth a claim for damage to the inmate's personal property that is in the care, custody, or control of prison employees, those employees are not entitled to sovereign immunity" under §8522(b)(3); finding that inmate stated viable claim for replevin based on lost boxes of personal property and damaged television that were in the possession of prison personnel); *Samuels,* 2014 WL 10298879, at \*2-3 (sovereign immunity did not bar inmate's negligence claim arising from the loss of his personal property and legal documents which had been left unattended and unsecured by prison personnel upon plaintiff's transfer to the RHU).

Even if the rule of *Williams* is accepted at face value, however, Plaintiff has not alleged a plausible basis for finding a waiver of sovereign immunity in the case at bar. The "property" at issue in this case – i.e., the supplemental life insurance policy – was not lost, damaged, or destroyed by virtue of Harrison's conduct. Rather, the policy at all times remained in force; its proceeds simply got paid to a different beneficiary.[11] Nor does the Complaint plausibly establish that the subject policy was within the "possession or control" of Commonwealth parties. The Court concludes, therefore, that the negligence claims at Count VIII must be dismissed with prejudice, as they are barred by the Commonwealth's sovereign immunity and this deficiency is

---

[11] Elsewhere in his brief, Plaintiff identifies the "personal property" at issue as Ginnetti's right to have the insurance proceeds paid to his chosen beneficiary. Characterizing the "property" in this fashion does nothing to advance the viability of Plaintiff's claim, however. Once again, there is no allegation in the Complaint that the "property" – *i.e.*, Ginnetti's contractual right to designate his chosen beneficiary -- itself caused Plaintiff's injury. The claim fares no better if, in accordance with *Williams* and *Pelzer*, we assume Plaintiff is alleging that Edinboro negligently destroyed Ginnetti's right under the supplemental life insurance policy to designate the beneficiary of his choice. Under this interpretation of Count VIII, the "personal property" at issue would be an intangible contractual right whose value was allegedly impaired due to Edinboro's negligence while the intangible contractual right was in Edinboro's "care, custody or control." This Court is aware of no case in which the personal property exception to sovereign immunity has been construed and applied in such a manner and, given the Pennsylvania Supreme Court's directive that exceptions to sovereign immunity are to be narrowly construed, this Court declines to do so here.

28

incapable of correction by way of further amendment. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (recognizing that, if a claim is vulnerable to dismissal under Rule 12(b)(6) but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency).

## B. CLAIMS AGAINST CIGNA

With the dismissal of Plaintiff's claims against Edinboro University, the only remaining claims before this Court are those asserted against LINA and Cigna at Counts I, II, and IV. These counts set forth claims under Pennsylvania law for, respectively, reformation of the subject insurance policy, breach of contract, and bad faith. Absent any basis for federal question jurisdiction, the only other possible basis for this Court's subject matter jurisdiction over the remaining claims is diversity of citizenship. This begs the question, however, whether all parties necessary to this action have been joined. Here, Defendants LINA and Cigna (hereafter, "moving Defendants") have moved to dismiss the claims against them based, in part, on Plaintiff's failure to join Irene Ginnetti pursuant to Rule 19 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(b)(7) (a party may assert, by way of motion, the defense of "failure to join a party under Rule 19"). Plaintiff denies that Rule 19 requires Ms. Ginnetti's joinder to this action.

Rule 19(a)(1) of the Federal Rules of Civil Procedure provides that:

[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

**(A)** in that person's absence, the court cannot accord complete relief among existing parties; or

**(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

29

> **(i)** as a practical matter impair or impede the person's ability to protect the interest; or
>
> **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

Where a person has not been joined as required, Rule 19(a) mandates that the court order the person to be joined as a party. Fed. R. Civ. P. 19(a)(2). If a "required party" cannot feasibly be joined, Rule 19(b) requires the court to determine "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). In making this determination, the court must consider:

> **(1)** the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> **(2)** the extent to which any prejudice could be lessened or avoided by:
>
> > **(A)** protective provisions in the judgment;
> >
> > **(B)** shaping the relief; or
> >
> > **(C)** other measures;
>
> **(3)** whether a judgment rendered in the person's absence would be adequate; and
>
> **(4)** whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.*

Thus, "Rule 19 mandates a two-step process," whereby: "(1) the court first must determine whether the absent party is 'necessary' under Rule 19(a); and (2) if the party is 'necessary' and joinder is not feasible, then the court must decide whether the party is 'indispensable' under Rule 19(b)." *Tullett Prebon PLC v. BGC Partners, Inc.,* 427 F. App'x 236, 239 (3d Cir. 2011) (citing *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007)). "[T]he moving party must show a plaintiff has failed to join a party under

30

[Rule] 19." *Scottsdale Ins. Co. v. RSE Inc.*, 303 F.R.D. 234, 235 (E.D.Pa.2014); *see also Bank of America, NA v. Prosser,* Civ. No. 12–00008, 2015 WL 1593747, at \*2 (D.V.I, April 6, 2015). In reviewing a Rule 12(b)(7) motion, the court "must accept as true the allegations in the complaint and draw all reasonable inferences in the nonmoving party's favor." *Scottsdale*, 303 F.R.D. at 236; *see also Jurimez Kommerz Transit G.M.B.H. v. Case Corp.*, 65 F. App'x 803, 805 (3d Cir. 2003). However, the court may also consider evidence outside the pleadings when making a Rule 19 determination. *Scottsdale*, 303 F.R.D. at 236 (citing authority); *see Prosser,* 2015 WL 1593747, at \*2.

Here, the moving Defendants argue that Ms. Ginnetti is a "necessary party" pursuant to Subsection 19(a)(1)(B)(ii). They cite numerous cases wherein claimants to insurance policy proceeds were recognized as indispensable parties to an action on the policy. *See, e.g., Wilson v. The Canada Life Assur. Co.,* No. 4:08-CV-1258, 2009 WL 532830, at \*3-9 (M.D. Pa. Mar. 3, 2009)(where plaintiff's lawsuit sought a determination of rights relative to life insurance proceeds, third party who asserted a competing claim as beneficiary under the policy was a necessary party whose nonjoinder, due to the court's lack of personal jurisdiction over that party, required dismissal of the action); *Rainbow Trucking, Inc. v. Ennia Ins. Co.,* 500 F. Supp. 96, 98-99 (E.D. Pa. 1980) (where contract of insurance stated that loss was payable to the assured and "to the person or persons specified in the schedule for that purpose," court noted that plaintiff's failure to join these parties "expose[d] defendants to the risk of incurring multiple obligations"; plaintiffs were therefore required to join loss payees as parties to their lawsuit against insurer); *accord In re Torcise,* 116 F.3d 860, 865 (11th Cir. 1997) ("It is well established under Rule 19 that all claimants to a fund must be joined to determine the disposition of that fund."); *Fister v.*

31

*Allstate Life Ins. Co.,* No. 97–2776, 1998 WL 883334, at *3 (4th Cir. Dec. 18, 1998) (Table case) (interpreting rule of joinder under Maryland law).

Plaintiff, on the other hand, maintains that subsection 19(a)(1)(B)(ii) does not apply because Ms. Ginnetti has not "claim[ed] an interest relating to the subject of [this] action." *See* Fed. R. Civ. P. 19(a)(1)(B). Plaintiff cites several cases generally recognizing that a Rule 19 movant cannot meet its burden of proof merely by attributing such an interest to the absent party or by claiming an interest on her behalf; rather, the absent party must affirmatively claim the relevant interest herself. *See, e.g., U.S. for the Use and Ben. of Special-Lite, Inc. v. Republic Western Surety Co.,* No. CIV. A. 97-7400, 1998 WL 299674, at *3 (E.D. Pa. May 20, 1998) (moving defendant failed to prove that absent party was a "necessary party" where defendant "[did] not contend that [the absent party] *claim[ed]* an interest in [the] litigation, merely that it [*had*] an interest") (emphasis in the original); *accord Marine One, Inc. v. Jones,* 29 F. Supp. 3d 669, 678 (E.D. Va. 2014) (stating that Rule 19(a)(1)(B) is interpreted narrowly and "usually requir[es] some sort of affirmative indication by the absent party in the court hearing the Rule 19 matter); *Lopez v. Fed. Nat'l. Mortgage. Ass'n,* No. CV 13-04782 MMM (AGRx), 2013 WL 7098634, at *6 (C.D. Cal. Oct. 8, 2013) ("Under the 'claimed interest' clause of Rule 19, it is inappropriate for one defendant to attempt to champion [the] absent party's interests. ... Stated differently, unless the absent party has actually claimed it has a legally protected interest in the action, she cannot be deemed a necessary party under Rule 19.") (internal quotation marks and citation omitted) (citing *United States v. Bowen,* 172 F.3d 682, 688-89 (9th Cir. 1999)).

Having carefully considered the arguments of both sides on the matter, the Court agrees with Defendants that Ms. Ginnetti is a "necessary party" who has claimed an interest relating to the subject of this action. The Complaint clearly avers that Cigna and/or LINA paid Ms. Ginnetti

the proceeds of the Cigna policy (Compl. ¶ 54), and all parties agree that Ms. Ginnetti has neither returned those proceeds to Defendants nor remitted them to Plaintiff. Although Ms. Ginnetti initially disavowed any interest in the insurance proceeds (*see* Compl. ¶51; Compl. Ex. J), she later completed a Preference Beneficiary's Affidavit in December 2012 attesting that no beneficiary had been designated under the policy and that she was a member of the first surviving class of beneficiaries under her son's policy. (*See* Def.s' Reply Br., Ex. A, ECF No. 17-2.) According to the Complaint, the insurance benefits were subsequently paid to Ms. Ginnetti in January 2013. (Compl. ¶54.) In light of these facts, the Court is satisfied that Ms. Ginnetti has "claimed an interest relating to the subject of [this] action" for purposes of Rule 19(a)(1)(B).

The Court also concludes that Ms. Ginnetti is "so situated that disposing of this action in [her] absence may... leave an existing party [namely, Cigna and/or LINA] subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of [Ms. Ginnetti's] interest." Fed. R. Civ. P. 19(a)(1)(B)(ii). In the event Counts I or II were litigated in this Court to a judgment that was favorable to Plaintiff and adverse to Cigna/LINA, those Defendants would have to pay out benefits for a second time under the same policy. Defendants' option, at that point, would be to seek a recovery of the benefits previously paid to Ms. Ginnetti. Because any judgment rendered in this Court would not be *res judicata* against Ms. Ginnetti, Cigna/LINA would be a substantial risk of incurring double or inconsistent obligations in the event that its claim against Ms. Ginnetti for recovery of the proceeds was unsuccessful. Accordingly, the Court is satisfied that Ms. Ginnetti is a "required" or "necessary" party pursuant to Rule 19(a).

33

Although Ms. Ginnetti is a "necessary party" to this litigation, it appears that her joinder is not feasible. Because both Ms. Ginnetti and Plaintiff are residents of Ohio, Ms. Ginnetti's joinder in this action would destroy the parties' diversity of citizenship and thereby preclude this Court from exercising subject matter jurisdiction over this case. *See Tullett Prebon PLC,* 427 F. App'x at 239 ("In this case, it appears undisputed that, at the very least, the joinder of Tullett Americas (as a citizen of Delaware like BGC itself) would destroy the 'complete diversity' necessary for federal jurisdiction.") (citing *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) ("Complete diversity requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant.")); *Wilson,* 2009 WL 532830, at *2 ("Joinder may not be feasible for a number of reasons, including because joinder would destroy diversity...") (citing *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 404 (3d Cir. 1993)).

In light of the foregoing, the Court must determine whether, in equity and good conscience, the action should proceed among the existing parties or be dismissed. Upon consideration of the factors outlined in Rule 19(b), the Court finds that a remand to state court is appropriate.

"The first and second factors under Rule 19(b)—whether judgment might prejudice absent and present parties and to what extent such prejudice can be lessened or avoided—are obviously related." *Wilson,* 2009 WL 532830, at *9 (citing *Gen. Refractories Co.,* 500 F.3d at 320). In addition, "the first factor under Rule 19(b) overlaps considerably with the Rule 19(a) analysis." *Id.* (internal quotation marks and citation omitted). As discussed, the moving Defendants could be prejudiced if there is an adverse judgment in this Court, and they then attempt to recover the proceeds from Ms. Ginnetti in separate litigation and obtain an adverse

34

judgment in that lawsuit as well. Accordingly, Cigna and LINA face a "substantial risk" that they may be found liable under the same policy to two separate beneficiaries. Nor is it readily apparent that this potential prejudice to Defendants can be lessened or avoided through protective provisions in any future adverse judgment, or by shaping the relief awarded, or through other similar measures. This is not a case, *e.g.*, wherein Ms. Ginnetti could voluntarily choose to appear, because her presence would cause this Court to lose subject matter jurisdiction under 28 U.S.C. §1332.

The third factor asks "whether a judgment rendered in the person's absence will be adequate." *General Refractories*, 500 F.3d at 320–21. "Specifically, this element allows the court to consider whether the relief it grants will prove an adequate remedy for the plaintiff." *Id.* (citation omitted). However, the third factor also refers to "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies." *Wilson,* 2009 WL 532830, at *10 (quoting *Provident Tradesmen Trust & Bank Co. v. Patterson*, 390 U.S. 102, 111 (1968), and citing *Republic of Phillipines v. Pimentel,* 553 U.S. 851, 870 (2008) (stating that "adequacy refers to the 'public stake in settling disputes by wholes, whenever possible'" (quoting *Provident*, 390 U.S. at 111)). In this case, this Court can provide full relief to Plaintiff if the action went forward, but it "cannot fully, or necessarily consistently, resolve the controversy over the proceeds of the insurance policy at issue." *Wilson,* 2009 WL 532830, at *10. As Defendants point out, this Court would be unable to compel Ms. Ginnetti to return the funds to LINA – or order her to pay them over to Plaintiff – in Ms. Ginnetti's absence.

Finally, the Court is also required to consider whether a plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. Here, Plaintiff *would* have an adequate remedy because, although not preferable in his eyes, he can pursue his reformation and breach of

35

contract claims in state court if need be, naming both the insurance Defendants and Ms. Ginnetti as parties.

Based on the foregoing considerations, this Court concludes that it cannot, in equity and good conscience, proceed with this case in the absence of Ms. Ginnetti. The case will therefore be remanded forthwith to state court, so that Plaintiff can join all parties necessary to this action in an appropriate forum.[12]

## IV. CONCLUSION

For the reasons stated in this Memorandum Opinion, the claims against Edinboro University at Counts V, VI, and VIII of the Complaint will be dismissed with prejudice. The claim against Edinboro at Count I will be dismissed without prejudice. The remaining claims against Cigna and LINA at Counts I, II, and IV of the Complaint will be remanded forthwith to the Erie County Court of Common Pleas pursuant to 28 U.S.C. §1447(c).

An appropriate order will follow.

Mark R. Hornak
United States District Judge

Dated: September 18, 2015

---

[12] Remand to state court is also appropriate by virtue of the fact that only state law claims presently remain, and there are no "extraordinary circumstances" warranting an exercise of supplemental jurisdiction over those claims. *See Positano v. PA Cardiothoracic Surgery, Inc.,* 610 F. App'x 191, 194 n. 3 (3d Cir. 2015) ("[A]bsent extraordinary circumstances, '[t]he district courts may decline to exercise supplemental jurisdiction over a [state law] claim ... if the district court has dismissed all claims over which it has original jurisdiction.'") (quoting 28 U.S.C. § 1367(c) and citing *Shaffer v. Bd. of Sch. Dirs. of Albert Gallatin Area Sch. Dist.,* 730 F.2d 910, 912 (3d Cir.1984).